**J. K. CREASY,** William W. McNamee, Frank Ranallo, A. W. Tuiccillo, Ed Kleeman and R. G. Cummiskey, on behalf of themselves and other property owners and lessees similarly situated, Plaintiffs,

v.

Lewis M. **STEVENS,** Secretary of Highways of the Commonwealth of Pennsylvania, and George M. Leader, Governor of the Commonwealth of Pennsylvania, Defendants.

Jack C. **MARSHELL** and Alice E. Marshell, Plaintiffs,

v.

Lewis M. **STEVENS,** Secretary of Highways of the Commonwealth of Pennsylvania, and George M. Leader, Governor of the Commonwealth of Pennsylvania, Defendants.

Civ. A. Nos. 13672, 13841.

United States District Court
W. D. Pennsylvania.
March 19, 1958.

A. E. Kountz, Edward P. Good, Kountz, Fry & Meyer, Pittsburgh, Pa., for plaintiffs.

Leonard Mendelson, Pittsburgh, Pa., for defendants.

Before: Staley, Circuit Judge, Marsh, District Judge, Miller, District Judge.

MARSH, District Judge.

The plaintiffs in these actions before a statutory court [1] seek to have a statute of the Commonwealth of Pennsylvania, Act of 1945, May 29, P.L. 1108, § 1 et seq., as amended, 36 Purdon's Pa.Stat. Ann. § 2391.1 et seq. (hereinafter referred to as "statute"), as applied to them, declared violative of the Constitution of the United States, and to have the defendants, the Governor and Secretary of Highways of the Commonwealth of Pennsylvania, permanently enjoined from enforcing said statute. We think they are so entitled.

Most of the important facts have been stipulated.[2] The plaintiffs are owners or tenants of land in Allegheny County, Pennsylvania, abutting a public highway

---

1. Convened pursuant to Title 28 U.S.C. §§ 2281, 2284.

2. Stipulation of counsel filed December 19, 1955; defendants' waiver of objections to plaintiffs' findings of fact; see transcript of hearing March 22, 1956, pages 68 et seq.

known as the "Airport Parkway" (hereinafter referred to as "parkway"), which highway extends from U. S. Routes 22–30, with which it intersects, to the Greater Pittsburgh Airport in said county.

Under the statute, the Secretary of Highways of Pennsylvania, with the approval of the Governor of Pennsylvania, is empowered to take over existing highways in the Commonwealth of Pennsylvania and to declare any such highway a "limited access highway" which is defined by the statute as a " * * * public highway to which owners or occupants of abutting property or the traveling public have no right of ingress or egress to, from or across such highway, except as may be provided by the authorities responsible therefor. * * *", 36 Purdon's Pa.Stat.Ann. § 2391.1. Section 8 of the statute, 36 Purdon's Pa. Stat.Ann. § 2391.8, provides that " * * the owner or owners of private property affected by the * * * designation of a limited access highway * * * shall be entitled only to damages arising from an actual taking of property. The Commonwealth shall not be liable for consequential damages where no property is taken * * *."

The defendants admit that were it not for the restraining order and a subsequent preliminary injunction granted by this court, the parkway would have been taken over as a state highway and designated a "limited access highway" under the statute. In that event, which would be the first instance in Pennsylvania where an existing highway has been designated a limited access highway under the statute, all of the plaintiffs will be denied direct access to the parkway from their land. Certain of the plaintiffs will have no means of access on any public highway, and in effect their property will be land-locked and completely inaccessible for most purposes. In declaring the parkway a limited access highway, under the authority of the statute, the Commonwealth would not take any land or improvements presently owned or leased by the plaintiffs.

Plaintiffs assert that § 8 of the statute, under the present decisional law of the Supreme Court of Pennsylvania, denies them compensation for any deprivation of access not accompanied by an actual physical taking of land, and in that event they would be deprived of property without due process of law as guaranteed them by the Fourteenth Amendment of the United States Constitution.

Initially, the instant proceedings were stayed because we were of the opinion that whether a substantial federal question was involved depended on the construction given the statute, and, further, we were unwilling to resolve that issue until the courts of the Commonwealth of Pennsylvania first had an opportunity to construe the statute in respect to the matter here in controversy.

Accordingly, the plaintiffs filed an action in equity against the defendants in the Court of Common Pleas of Dauphin County, Pennsylvania, requesting relief identical to that sought here.

Upon preliminary objections of the defendants, the Dauphin County Court dismissed the plaintiffs' complaint, holding that under § 8 of the statute, the plaintiffs were afforded an adequate remedy at law to test their right to damages, if any, before a board of viewers. It specifically refrained from adjudicating the pivotal issue of whether or not plaintiffs could recover damages in such proceedings. On appeal, the Supreme Court of Pennsylvania affirmed the decision of the lower court.[3]

Subsequently, the plaintiffs filed a motion here for a permanent injunction enjoining the defendants from enforcing the statute, and on the same date, the defendants moved to dissolve the preliminary injunction and to dismiss the complaint, which matters are presently before the court for decision.

Some of the plaintiffs have established on their land certain businesses, i. e.,

3. Creasy v. Lawler, 1957, 389 Pa. 635, 133 A.2d 178, in which the opinion of the Dauphin County Court is quoted verbatim and adopted per curiam.

service stations, restaurants, and an amusement park. Other properties are presently occupied as residences or farms, but because of the advantage of direct access to the parkway, possess great value as potential commercial sites.

At the time these proceedings were instituted and at the present time, the parkway is the principal thoroughfare for vehicular travel between the City of Pittsburgh, Pennsylvania, and the Greater Pittsburgh Airport, and a vast number of vehicles daily pass the properties of the plaintiffs. The success of all the businesses now in existence and those contemplated by the plaintiffs, or their prospective assigns, depends almost entirely on the continued enjoyment of access to the parkway.

In the past, some of the plaintiffs had been carrying on negotiations to either sell or lease their land for very attractive prices, but the negotiations were broken off by the interested parties because of the publicity connected with the plans of the Commonwealth to designate the parkway a limited access highway.

It is impossible at this time to ascertain with any degree of certainty the extent or degree of damage that would be incurred by the individual plaintiffs because of the deprivation of access involved; however, it would appear from convincing testimony introduced by the plaintiffs that the properties as a whole would depreciate in value in an amount in excess of one million dollars.

The parkway is presently maintained by the County of Allegheny, having been constructed by it in 1949 after it condemned, through the exercise of its power of eminent domain, the necessary quantities of land for the right-of-way. In some instances, part of the land owned or leased by the plaintiffs was "taken". In accordance with the established law in Pennsylvania,[4] the Board of Viewers when assessing damages to the property owners for their land so taken, diminished the damages to the extent that the abutting properties were enhanced in value because of the benefits obtained by reason of the frontage on the new parkway and the access thereto.[5]

*Jurisdiction*

Federal jurisdiction in these cases is based on the plaintiffs' allegation of a substantial federal question, to-wit, that the "Pennsylvania Limited-Access Highway Act" as applied to them is violative of the Fourteenth Amendment of the United States Constitution in that it deprives them of their property without due process of law, and denies them the equal protection of the laws. See Delaware, L. & W. R. Co. v. Town of Morristown, 1928, 276 U.S. 182, at page 193, 48 S.Ct. 276, 72 L.Ed. 523, for a discussion of compensation as an element of due process; see also 16A C.J.S. Constitutional Law § 646.

Each of the plaintiffs proved that if the parkway were designated limited-access, he would suffer damages in excess of the requisite jurisdictional amount,[6] and in the Marshell case there

---

4. Cf. In re Appointment of Viewers, etc., 1942, 344 Pa. 5, 23 A.2d 880, 881; see also "State Highway Law" of Pa., Act of 1945, June 1, P.L. 1242, Art. III, § 303, 36 Purdon's Pa.Stat.Ann. § 670-303, with regard to the present procedure in assessing damages for land taken for state highways.

5. The defendants contend that the Viewers also considered the possibility of the parkway being subsequently designated a limited access road because the statute was then in effect. The evidence in this respect was not convincing.

6. The defendants not only do not seriously contest that each plaintiff would suf-

fer damages in excess of $3,000, the jurisdictional amount, but in effect so stipulated as to the original plaintiffs by advising the court that they had no objection to the plaintiffs' "Request for Findings of Fact" No. 3 (T. 3/22/56, p. 68); and as to the intervening plaintiffs, the defendants were willing to so stipulate if this court had granted the defendants' petition for an injunction they had requested during the proceedings, enjoining certain of the plaintiffs from effecting a change in the local zoning laws or improving their properties pending the outcome of these actions (T. 3/22/56, p. 122).

is the additional allegation of diversity of citizenship.

Both cases were consolidated for hearing, and as required by 28 U.S.C. § 2281 were heard by a three-judge court. The defendants concede that this court has jurisdiction;[7] however, relying on the authority of City of El Paso v. Texas Cities Gas Co., 5 Cir., 1938, 100 F.2d 501, 503, certiorari denied 306 U.S. 650, 59 S.Ct. 592, 83 L.Ed. 1049, rehearing denied 306 U.S. 669, 59 S.Ct. 643, 83 L.Ed. 1063, and Alabama Public Service Commission v. Southern Railway Co., 1951, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, contend that we should not exercise our jurisdiction and grant the extraordinary relief requested because of the disinclination of the federal courts to interfere in state matters before remedies afforded by the state have been exhausted, and, especially so, where the State Courts have not yet rendered a clear or definitive decision as to the meaning of the statute.

In Alabama Public Service Comm. v. Southern Railway Co., supra, the Supreme Court of the United States, although assuming it had jurisdiction, refused to exercise it to examine the constitutionality of an order of the Alabama Public Service Commission denying a permit to the plaintiff to discontinue certain intrastate trains on the ground that they were being operated at a loss. The plaintiff under Alabama law had the right prior to instituting the action in the federal court to have the order reviewed by the state courts but chose not to do so. The Supreme Court declined to exercise jurisdiction as a matter of sound equitable discretion because of comity and because it concluded that the court's intervention was not required to protect the plaintiff's constitutional rights.

Likewise in City of El Paso v. Texas Cities Gas Co., supra, the United States Court of Appeals for the Fifth Circuit reversed the granting of a preliminary injunction to enjoin the enforcement of a city ordinance where the plaintiff had not taken an appeal provided by state statute.

■ We agree that the federal courts should be reluctant to exercise jurisdiction in cases where the plaintiffs' constitutional rights will be properly protected in the state tribunal and where the statute under attack has not yet been construed by the State Courts, and this was our reason in originally staying these proceedings. However, there is another facet to be examined, and that is whether in the process of relegating the plaintiffs to the state tribunals to test the constitutionality of the statute, they will be irreparably harmed. See: Toomer v. Witsell, 1948, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460.

If the defendants proceeded with their plans to make the parkway limited-access, the businesses now established in all likelihood would have to be closed; some of the plaintiffs would not be able to make any practical use of their lands because of the loss of all access to public highways; and those plaintiffs who have conducted negotiations to sell or lease their properties for commercial uses dependent on the continued right of access would be deprived of an opportunity to realize a successful completion of the negotiations.

■ Hence we are persuaded that were we to refuse to exercise our jurisdiction, the plaintiffs would suffer substantial financial losses during the time it would take to litigate the constitutionality of the statute in the State Courts, which losses could never be recouped if the statute were eventually declared to be unconstitutional. In that event plaintiffs would be irreparably harmed.

7. See defendants' brief filed November 18, 1955, p. 4. Any doubt as to whether the Federal Courts have jurisdiction to determine the constitutional validity of a state statute not yet construed by the State Courts has been dispelled by the Supreme Court of the United States in Doud v. Hodge, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577.

Under these circumstances, we believe that the only proper course of conduct is for us to exercise our jurisdiction and determine whether the statute is in fact unconstitutional. Compare Toomer v. Witsell, supra, where the court held that equitable relief in enjoining the enforcement of an unconstitutional state statute was appropriate where the plaintiffs would suffer substantial losses in complying with the statute, and where they would be subject to fines and imprisonment for defiance of same. It is of interest to note that the statute in the case at hand provides for imprisonment and fines where any person violates any traffic control established for a limited-access highway by the proper authorities, § 9 of the statute, 36 Purdon's Pa. Stat.Ann. § 2391.9.

## Eminent Domain or Police Power

The plaintiffs contend that if the parkway is declared a limited-access highway by the defendants in accordance with the authority vested in them by the statute, the resultant total destruction of their right of access to the parkway amounts to a "taking" under the Commonwealth's power of eminent domain, thereby imposing a duty on the Commonwealth to pay them compensation.

On the other hand the defendants contend that the statute is a valid and legitimate exercise of the Commonwealth's police power, and even though property rights of the plaintiffs may be destroyed by the application of the statute, there is no duty imposed on the Commonwealth under the Fourteenth Amendment of the Constitution to pay compensation to the plaintiffs.

█ The power of eminent domain and the police power have been defined and contrasted by the Supreme Court of Pennsylvania in Appeal of White, 1926, 287 Pa. 259, 134 A. 409, 411, 53 A.L.R. 1215, as follows:

" 'Police power' should not be confused with that of eminent domain. Police power controls the use of property by the owner, for the public good, its use otherwise being harmful; while 'eminent domain' and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured, or destroyed, while under the police power no payment is made for a diminution in use, even though it amounts to an actual taking or destruction of property. Under the Fourteenth Amendment, property cannot be taken except by due process of law. Regulation under a proper exercise of the police power is due process, even though a property in whole or in part is taken or destroyed."

See, also, Chicago, B. & Q. Railway Co. v. State of Illinois ex rel. Drainage Com'rs, 1906, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596; New Orleans Public Service v. City of New Orleans, 1930, 281 U.S. 682, 50 S.Ct. 449, 74 L.Ed. 1115.

█ Though property may be regulated to a certain extent under the police power, if the regulation goes too far, it will be recognized as a taking. Pennsylvania Coal Co. v. Mahon, 1922, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322.

█ The ultimate decision as to proper exercise of the police power rests with the courts, and, if the exercise goes too far, there is a judicial duty to investigate and declare the exercise of the police power invalid. Appeal of White, supra.

In Pennsylvania Coal Co. v. Mahon, supra, 260 U.S. at pages 415–416, 43 S.Ct. at page 160, Mr. Justice Holmes, speaking for the court, had the following to say about the police power of the Commonwealth of Pennsylvania unconstitutionally exercised by it under the "Kohler" Act which forbade the mining of coal in such a way as to cause the subsidence of dwellings:

"The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. Hairston v.

Danville & Western Ry. Co., 208 U.S. 598, 605. When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States.

" * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change. As we already have said, this is a question of degree— and therefore cannot be disposed of by general propositions."

See, also Miller v. City of Beaver Falls, 1951, 368 Pa. 189, 82 A.2d 34, 36.

The defendants cannot successfully maintain that the plaintiffs would not be deprived of property rights by the change of the parkway into a limited-access highway.

■ The right of access has been recognized universally as a property right which cannot be taken or materially interfered with without just compensation. 29 C.J.S. Eminent Domain § 105; 18 Am. Jur., Eminent Domain, §§ 158, 183, and cases cited thereunder.

The Pennsylvania courts have also recognized it as a property right. Breinig v. Allegheny County, 1938, 332 Pa. 474, 2 A.2d 842; and Lang v. Smith, 1934, 113 Pa.Super. 559, 173 A. 682, 683, wherein the court said:

" 'That a man's right of access to his property is a valuable right which cannot be taken away without just compensation has been repeatedly recognized. * * *' "

In Donovan v. Pennsylvania Co., 1905, 199 U.S. 279, 301–302, 26 S.Ct. 91, 97, 50 L.Ed. 192, the Supreme Court of the United States, discussing the rights of abutting property owners, stated as follows:

" ' * * * The right may be regarded in the nature of an incorporeal hereditament. * * *' The general doctrine is correctly stated in Dillon on Municipal Corporations: 'For example, an abutting owner's right of access to and from the street, subject only to legitimate public regulation, is as much his property as his right to the soil within his boundary lines. When he is deprived of such right of access, or of any other easement connected with the use and enjoyment of his property, other than by the exercise of legitimate public regulation, he is deprived of his property.' "

■ We agree that the construction and designation of limited-access highways is a proper subject of police regulation and legislation by the Commonwealth insofar as it relates to the welfare and safety of the public; however, we cannot agree that a total deprivation of the right of access to an existing highway without compensation can be justified as such.

Most authorities on limited-access highways recognize that where an established "land-service" road, as is the parkway presently, in which the normal right of access has already come into being, is converted into a limited-access highway in such a manner that the existing rights of access are destroyed, the owners of such rights are entitled to compensation exactly as they would be if such rights were destroyed by any other type of construction. See "Abutting owner's right to damages or other relief for loss of access because of limited-access highway or street", 43 A.L.R.2d 1072, § 3, p. 1074; 18 Am.Jur., Eminent Domain, §§ 183, 184, 185 and cases cited thereunder. See, also, the following articles: Clark, The Limited Access Highway, 27 Wash.L.R. 111, 121 (1952); Cunnyngham, The Limited-Access Highway from a Lawyer's Viewpoint, 13 Mo.L.R. 19 (1948); and Freeways and the Rights of Abutting Owners, 3 Stanford L.R.

298 (1951). The Supreme Court of Wisconsin in the recent case of Carazalla v. State of Wisconsin, 1955, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276, 278, recognizing those articles as authoritative, referred to them as follows:

> "The authors of all three articles agree that the limiting of access to a public highway through governmental action results from the exercise of the police power, and that in the case of a newly laid out or relocated highway, where no prior right of access existed on the part of abutting land owners, such abutting land owners are not entitled to compensation. *On the other hand, the authorities cited in these articles hold that where an existing highway is converted into a limited-access highway with a complete blocking of all access from the land of the abutting owner, there results the taking of the preexisting easement of access for which compensation must be made through eminent domain.* * * *" (Emphasis ours.)

These articles are also referred to as "instructive discussions" on the subject by the Supreme Court of Missouri in State ex rel. State Highway Comm. v. Clevenger, 1956, 365 Mo. 970, 291 S.W.2d 57.

Nor can the defendants successfully maintain that no taking would be involved in the deprivation of plaintiffs' access to the parkway merely because the defendants do not contemplate the destruction or physical appropriation of the plaintiffs' land. Cf. United States v. Causby, 1946, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; Gardner v. County of Allegheny, 1955, 382 Pa. 88, 114 A.2d 491.

The Supreme Court of Pennsylvania discussed the development of the law with regard to when a "taking" has occurred in Miller v. City of Beaver Falls, supra, as follows [368 Pa. 189, 82 A.2d 38]:

> "* * * 'The law as to what constitutes a taking has been undergoing a radical change during the last few years. Formerly it was limited to the actual physical appropriation of the property or a divesting of title, but now the rule adopted in many jurisdictions and supported by the better reasoning is that when a person is deprived of any of certain rights in and appurtenant to tangible things, he is to that extent deprived of his property, and his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; "and it may be laid down as a general proposition, based upon the nature of property itself, that, *whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, pro tanto, taken, and he is entitled to compensation*" ' * * *

> * * * * * *

> "* * * The Constitution of the United States and the Constitution of Pennsylvania empower the city to take and appropriate private land for public purposes. *All that is required is that just compensation be paid therefor.* We do not propose that our Federal or State Constitution shall be disregarded or nullified either directly or by subterfuge, even though the purposes and objectives of a legislative act are worthy and are sincerely believed to be in the best public interest."

Therefore, we conclude that the proposed deprivation of the plaintiffs' access to the parkway would constitute a taking of property in the constitutional sense under the Commonwealth's power of eminent domain for which compensation must be paid to plaintiffs.

Does the Statute Conform With the Due Process Provisions of the Federal Constitution Insofar As It Is An Exercise of the Commonwealth's Power of Eminent Domain?

It is an arresting feature in the case at bar that while plaintiffs are most apprehensive that § 8 of the statute may be construed to deny to them compensation for loss of access since none of their land will be taken, the defendants vigorously contend that such was the intention of the Pennsylvania Legislature, and that if plaintiffs are relegated to their remedy at law, the Pennsylvania Supreme Court will so hold. Moreover, the defendants frankly assert that they would also urge this construction of the statute on the Pennsylvania Courts.[8] Both sides have presented persuasive argument and Pennsylvania decisions to support this interpretation.

But defendants contend that the statute is constitutionally sound because § 8 thereof provides plaintiffs with an opportunity to test their right to compensation in the State Courts beginning with a board of viewers.

Plaintiffs contend that we should examine this statute and determine whether or not it provides them with a certain and reasonably prompt right to compensation for loss of access where there is no taking of their land. They argue that if it does not, the statute, inter alia, is violative of due process under the Fourteenth Amendment. They earnestly urge upon us that if the statute is unconstitutional, it would be highly inequitable to compel them to pursue a remedy at law in the State Courts, only to have it judicially determined that plaintiffs cannot recover compensation under the statute, —the very result which plaintiffs fear and of which defendants are convinced.

■■■ Without venturing to predict the ultimate decision of the Pennsylvania Courts on the issue of compensation, we think in these circumstances it is our duty now to examine § 8 of the statute, construe it in the light of the pertinent Pennsylvania Supreme Court decisions, and determine whether as an exercise of the Commonwealth's power of eminent domain, it conforms with the due process requirements of the Fourteenth Amendment with respect to the deprivation of plaintiffs' right of access to the parkway.

We begin with general principles.

■■■ "As a general rule, the exercise of the power of eminent domain that is, the taking of private property for public use, is subject to the constitutional right of the owner of the property taken to just compensation, regardless of the manner in which the property is appropriated, or whether it is used for the purposes for which it is taken." 29 C.J.S. Eminent Domain § 97; see, also, 12 Am.Jur., Constitutional Law, § 658.

■■■ "The constitutional guaranty as to just compensation for property taken for public use is paramount to any statute, and a statute not in keeping with such guaranty is unconstitutional." 29 C.J.S. Eminent Domain § 98.

"A statute authorizing an exercise of the power of eminent domain is inoperative and will not support condemnation proceedings *unless it provides for certain and reasonably prompt compensation to the owner of the property taken: * * *."* 29 C.J.S. Eminent Domain § 99. (Emphasis supplied.)

■■■ "While the manner in which payment is to be made is ordinarily within the province of legislative discretion, *the method of compensation prescribed must be such as to preserve inviolate to the owner absolute assurance of compensation before he is required to surrender possession of his property."* 29 C.J.S. Eminent Domain § 99. (Emphasis supplied.)

In § 8 it is provided that owners of private property such as plaintiffs " * * * shall be entitled only to damages arising from an actual taking of property. The Commonwealth shall not be liable for consequential damages where no property is taken * * *." If the Legislature meant to identify or equate the term "property" with "land", it seems quite clear that it intended to

---

8. Transcript of hearing (11/18/57), p. 41; see, also, Id., pp. 4, 31, and transcript of hearing (2/12/57), pp. 8–9.

deprive the plaintiffs of compensation for the loss of the incorporeal property right of ingress or egress to, from or across a limited-access highway.

We have referred to the Pennsylvania Legislative Journal for help in determining precisely what the Pennsylvania Legislature intended when it provided that the Commonwealth would not be liable for consequential damages "where no property is taken" in the designation of an existing highway as a limited-access highway, but we find the journal devoid of all discussion or information in this regard.[9]

Decisions of the Pennsylvania Supreme Court dealing with the liability of the Commonwealth for damages in road cases have denied compensation for damages which occur where there is less than the actual and physical taking of land or ground for the construction or improvement of a highway.

In Re Soldiers' and Sailors' Memorial Bridge, 1932, 308 Pa. 487, 162 A. 309, 310, where no land was taken, the Supreme Court of Pennsylvania denied compensation for the impairment of access and deprivation of light sustained by the plaintiff as the result of the erection of a bridge by the Commonwealth in the center and within the boundary lines of a street on which the plaintiff's property abutted.

In Brewer v. Commonwealth, 1942, 345 Pa. 144, 27 A.2d 53, the Pennsylvania Supreme Court denied a plaintiff whose land abutted a highway compensation for damages sustained as the result of a change of grade where no land belonging to the plaintiff was physically taken.

In Heil v. Allegheny County, 1938, 330 Pa. 449, 199 A. 341, a state highway on which plaintiff's land abutted was relocated, but since none of the plaintiff's land was taken or seized in the relocation, he was denied damages resulting from the diminution of the value of his land resulting from the diversion of the traffic.

The theory in the earlier decisions was again given support in the case of Koontz v. Commonwealth, 1950, 364 Pa. 145, 70 A.2d 308, 309, where the Supreme Court of Pennsylvania said:

"It is, of course, not open to dispute that, before the Commonwealth can be made to answer, in the present state of the statute law * * * *for damages in cases of highway improvement, there must have been a taking of the complaining property owner's land* * * *." (Emphasis supplied.)

In a more recent decision of the Superior Court of Pennsylvania, Moyer v. Commonwealth, 1957, 183 Pa.Super. 333, 132 A.2d 902, the court specifically held that the impairment of a landowner's ingress and egress to a highway resulting from its relocation 30 feet away, and the building of fill in front of the landowner's property, *without the taking of land,* was not compensable under the Pennsylvania "State Highway Law".[10]

 Interpreting the statute in the light of the foregoing cases,[11] we conclude that the Pennsylvania Legislature did not intend to compensate those abutting landowners whose land is not physically taken, but whose right of access to an existing highway is destroyed by the designation of that highway as a limited-access highway.[12] For that rea-

---

9. See Vols. III and IV, Pa. Legislative Journal, 1945.

10. Supra, footnote 4.

11. It would necessarily follow from the decision in Doud v. Hodge, supra, 350 U.S. at page 487, 76 S.Ct. at page 492, 100 L.Ed. 577, that in the absence of a construction of a state statute by the State Courts, this court may construe the statute in order to determine its federal constitutionality. Cf. Versluis v. Town of Haskell, Okl., 10 Cir., 1946, 154 F.2d 935; Virginia Surety Co. v. Knoxville Transit Lines, D.C.E.D.Tenn.1955, 135 F.Supp. 606; Day v. North Am. Rayon Corp., D.C.E.D.Tenn.1956, 140 F.Supp. 490.

12. Cf. the Pennsylvania "Statutory Construction Act", 1937, May 28, P.L. 1019,

son, we think the statute is repugnant to the due process clause of the Fourteenth Amendment of the Constitution of the United States.

We are especially persuaded to this conclusion by the fact that § 8 of the statute provides that damages for the taking of property for limited-access highways in townships and boroughs, as here, shall be paid in the same manner as now provided by law, to-wit, the "State Highway Law". That law, as construed by Koontz v. Commonwealth, supra, and Moyer v. Commonwealth, supra, does not impose liability on the Commonwealth for damages where no land is taken.[13]

Moreover, we have found no other general law of Pennsylvania which, under accepted principles,[14] could be read in conjunction with the present statute so as to make the payment of compensation to the plaintiffs possible.

The defendants submit that even if we hold § 8 of the statute to be unconstitutional, the remaining provisions of the Act are valid because the statute contains a "severability clause" (§ 15, 36 Purdon's Pa.Stat.Ann., § 2391.15).[15] However, we think that the remaining provisions of the statute as excised from § 8 cannot stand alone when applied to these plaintiffs because there is no method provided therein by which plaintiffs may be compensated for the taking; therefore, we cannot refuse to grant the relief prayed for by the plaintiffs on that account.

*Six Per Cent Argument*

To bolster their argument that the plaintiffs are not entitled to any compensation from the Commonwealth for the taking of their right of access to the parkway, the defendants advance a further interesting theory to the effect that historically in Pennsylvania the land taken for roads and highways is regarded a little differently than land taken for other public uses because in the original grants or patents from the Commonwealth, there were contained reservations to the Commonwealth of 6 acres out of every 100 acres for roads, and the Legislature may so use the land reserved without paying the value of it to the grantee, his heirs or assigns. See Plank-Road Company v. Thomas, 1852, 20 Pa. 91, 93; Workman v. Mifflin, 1858, 30 Pa. 362; Township of East Union v. Comrey, 1882, 100 Pa. 362; Herringtons' Petition, 1929, 266 Pa. 88, 109 A. 791. See, also, 35 Dick.L.R. 192 (1931) for an interesting historical discussion of this rule.

Though the defendants' argument appears plausible, we cannot subscribe to it as sufficient cause for holding that these plaintiffs are not entitled to any compensation for the taking of their existing right of access to the parkway.

We cannot believe that the original grantors ever envisaged limited-access highways, but rather were concerned equally with the construction of roads for the benefit of the landowners as well as the public using the road. We believe

---

art. I, § 1 et seq., as amended, 46 Purdon's Pa.Stat.Ann. § 501 et seq., especially §§ 551, 552(4) with regard to ascertaining the intent of the Legislature in the enactment of a law.

13. The federal courts are bound by the interpretation placed by the highest court of a state upon a statute of that state. Georgia Ry. & Electric Co. v. City of Decatur, 1934, 295 U.S. 165, 55 S.Ct. 701, 79 L.Ed. 1365; Burns Mortgage Co. v. Fried, 1934, 292 U.S. 487, 54 S.Ct. 813, 78 L.Ed. 1380; Hartford Accident & Indemnity Co. v. N. O. Nelson Co., 1934, 291 U.S. 352, 54 S.Ct. 392, 78 L.Ed. 840;

United States ex rel. Touhy v. Ragen, 7 Cir., 1955, 224 F.2d 611, certiorari denied 350 U.S. 983, 76 S.Ct. 470, 100 L. Ed. 851; McClaskey v. Harbison-Walker Refractories Co., 3 Cir., 1943, 138 F.2d 493.

14. Cf. In re Sharett's Road, 1848, 8 Pa. 89; see also cases cited in 29 C.J.S. Eminent Domain § 99, footnote 96.

15. Even if the statute did not contain a severability clause, the Pennsylvania Statutory Construction Act, § 55, 46 Purdon's Pa.Stat.Ann. § 555, which provides for severability generally in any statute would apply.

this sentiment is expressed in an early case alluding to the rule, McClenachan v. Curwin, 1802, 3 Yeates, Pa., 362, at pages 372–373, where the court said:

"Although in this early arrangement, there might be a chance that certain purchasers might be obliged to contribute more than the 6% to the roads, yet it might possibly have been foreseen, that scarce any instance of that would occur, without an equivalent likewise accruing to the purchaser, from the vicinity of such public roads to their buildings and improvements."

The so-called "Six Per Cent Rule", when closely scrutinized, is essentially based on a contractual relationship, the plaintiffs' original predecessors in title having received, in the form of the additional 6 acres, consideration for the right of the Commonwealth to later use the additional acreage for roads. However, we believe that the original agreements did not encompass a situation whereby the original patentees or their privies would be deprived of access to any road so built, and for this reason we can only conclude that the plaintiffs through their predecessors in title have never been compensated in any form for the particular right of which the defendants now seek to deprive them. The point we are developing is that contractually the original patentees, or their privies, the plaintiffs, have never received consideration for their being deprived of access to a road constructed on the reserved acreage.

Although it might be argued that restricting access is actually using "property" for road purposes, the original reservation seems to apply only to land actually used for road construction and to unimproved land, Plank-Road Co. v. Thomas, supra, 20 Pa. at page 94. These are additional matters taking this present set of facts out of the operation of the rule.

*Conclusion*

For the foregoing reasons we believe the complete deprivation of the plaintiffs' present right of access to the Airport Parkway would constitute a "taking" by the Commonwealth under its power of eminent domain for which the plaintiffs should be compensated in money damages. We do not consider the complete deprivation by law of the right of access as being within the principle of "damnum absque injuria".

Since the "Pennsylvania Limited Access Highway Act" in its present form, as we construe it and as counsel for the defendants argues, denies the plaintiffs compensation for the proposed taking, the defendants should be permanently enjoined from enforcing it over the plaintiffs' protest.

In arriving at this conclusion, we need not consider the further arguments advanced by plaintiffs, namely, that the statute denies them equal protection of the laws because the Pennsylvania Turnpike Act, 15 P.S.Pa. § 2631 et seq., permitting the Pennsylvania Turnpike Authority to take land for the construction of the Turnpike provided for the payment of consequential damages;[16] and that the Commonwealth is estopped from denying damages to the plaintiffs for the destruction of their right of access because when its political subdivision, the County of Allegheny, originally condemned the property in quo, the County obtained a reduction in the damages otherwise payable to the plaintiffs because of the benefits they would derive from the right of access to the parkway after it was constructed. Neither need we consider the plaintiffs' argument with regard to the impairment of obligation of contract.

An appropriate order will be entered permanently enjoining the defendants from enforcing the statute against the plaintiffs.

16. Also under the proviso in § 8 it appears that some abutting property owners may in some circumstances secure compensation for consequential damages while others may not.