MARTIN, SUCCESSOR TO LAWLER, SECRETARY
OF HIGHWAYS OF PENNSYLVANIA, ET. AL. *v.*
CREASY ET AL.

No. 157.  Argued April 2, 1959.—Decided June 8, 1959.

*Anne X. Alpern,* Attorney General of Pennsylvania, argued the cause for appellants. On the brief were *Harry J. Rubin,* Deputy Attorney General, *Harrington Adams* and *Leonard M. Mendelson.*

*Edward P. Good* argued the cause for appellees. With him on the brief were *A. E. Kountz* and *Thomas D. Caldwell.*

Opinion of the Court by MR. JUSTICE STEWART, announced by MR. JUSTICE WHITTAKER.

This action was instituted in the District Court for the Western District of Pennsylvania by owners of property abutting a section of highway which runs between downtown Pittsburgh and the Greater Pittsburgh Airport. The complaint stated that the Secretary of Highways and the Governor of Pennsylvania were about to designate that section of the road a "limited access highway" under authority of a Pennsylvania statute. Claiming that such action would deprive them of their property without due process of law, since the Pennsylvania statute allegedly did not provide compensation for loss of access to the highway, the plaintiffs asked for injunctive relief and for a judgment declaring the statute unconstitutional.

The legislation under which it was asserted the state officials were planning to act is the Pennsylvania Limited Access Highways Act of 1945.[1] The Act defines a limited

---

[1] Pa. Laws 1945, No. 402, § 1 *et seq.,* as amended, Pa. Laws 1947, No. 213 and Pa. Laws 1957, No. 112. 36 Purdon's Pa. Stat. Ann. § 2391.1 *et seq.*

access highway as "a public highway to which owners or occupants of abutting property or the traveling public have no right of ingress or egress to, from or across such highway, except as may be provided by the authorities responsible therefor." [2] It authorizes the Secretary of Highways, with the approval of the Governor, to declare any highway, or part thereof, to be a limited access highway.[3] Section 8 of the statute, as amended in 1947, provides:

> "The owner or owners of private property affected by the construction or designation of a limited access highway . . . shall be entitled only to damages arising from an actual taking of property. The Commonwealth shall not be liable for consequential damages where no property is taken . . . ."

The latter section was specifically attacked by the plaintiffs, who claimed that in the light of the Pennsylvania courts' interpretation of other statutes, this provision would be construed to mean that compensation was to be paid only if land were taken. The Limited Access Highways Act itself had never been construed by the courts of Pennsylvania.

The district judge issued a temporary restraining order. Thereafter a three-judge court was convened pursuant to 28 U. S. C. §§ 2281 and 2284. After stipulations of fact were filed, the District Court entered an order staying proceedings to permit the parties to seek a determination of their rights under the statute in the courts of Pennsylvania.

Thereupon the plaintiffs filed an equitable proceeding in the Common Pleas Court of Dauphin County, Pennsylvania. That court pointed out that the plaintiffs were asking for a determination of "whether or not a tak-

---

[2] 36 Purdon's Pa. Stat. Ann. § 2391.1.
[3] 36 Purdon's Pa. Stat. Ann. § 2391.2.

ing of property has occurred and what damages shall be awarded therefor, and that, if the depriving them of access is found to be a taking of a compensable property right, that plaintiffs' legitimate interests will be constitutionally safeguarded by a resort to viewers proceedings and, if necessary, by later appeals to the courts." *Creasy* v. *Lawler,* 8 Pa. D. & C. 2d 535, 537.

As a court of equity, the county court found it proper to determine only the last of these questions, and its answer was unequivocal:

> "All of plaintiffs' rights can be protected and secured in a proceeding before viewers, as is provided in section 8 of The Limited Access Highway Act of May 29, 1945. . . . Here the legislature, in The Limited Access Highways Act, . . . has provided a way in which every property owner may have it decided whether he is entitled to compensation and, if so, when, for what, and in what amounts. . . . Should the Commonwealth proceed, then *at that time* plaintiffs will have the right to proceed before viewers on the question of their right to damages. In the orderly course of the procedure provided by The Limited Access Highways Act, they will have a right of appeal to the common pleas court and a jury trial, and still later to have their rights adjudicated in the appellate courts. At all times their constitutional rights, whatever they may be, will be guarded and protected." 8 Pa. D. & C. 2d, at 538–539.

This decision was affirmed *per curiam* by the Supreme Court of Pennsylvania, which explicitly adopted the lower court's opinion. 389 Pa. 635, 133 A. 2d 178.

Further proceedings were then had in the District Court. Although stating its awareness "that the federal courts should be reluctant to exercise jurisdiction in cases where the plaintiffs' constitutional rights will be properly

protected in the state tribunal and where thě statute under attack has not yet been construed by the State courts," nevertheless the District Court proceeded to adjudicate the merits of the controversy, believing that the plaintiffs might be irreparably harmed during the period required to determine their rights in the state courts. "Without venturing to predict the ultimate decision of the Pennsylvania Courts on the issue of compensation," the District Court was of the view that the Pennsylvania Legislature did not intend to compensate abutting landowners "whose right of access to an existing highway is destroyed by the designation of that highway as a limited-access highway." For that reason the court found the statute repugnant to the Due Process Clause of the Fourteenth Amendment. A final decree was issued, permanently enjoining, in the most sweeping terms, the Secretary of Highways and the Governor from proceeding. *Creasy* v. *Stevens,* 160 F. Supp. 404.[4] The case is here by way of a direct appeal, 28 U. S. C. § 1253, of which this Court noted probable jurisdiction. 358 U. S. 807.

It was the clear pronouncement of the Pennsylvania courts that the state statute provides a complete procedure to guard and protect the plaintiffs' constitutional rights "at all times." In the light of this pronouncement it is difficult to perceive the basis for the District Court's conclusion that the plaintiffs would be irreparably harmed

---

[4] The language of the court's order was as follows: "Now, Therefore, It Is Finally Determined, Ordered, Adjudged and Decreed that the defendants, Lewis M. Stevens, Secretary of Highways of the Commonwealth of Pennsylvania, and George M. Leader, Governor of the Commonwealth of Pennsylvania, be and they hereby are permanently enjoined from enforcing or otherwise complying with the Pennsylvania 'Limited-Access Highways Act', 1945, May 29, P. L. 1108, § 1, et seq., as amended, 36 Purdon's Pa. Stat. Ann. § 2391.1 et seq., so as to interfere with or deprive the plaintiffs of their right of ingress or egress to, from or across the 'Airport Parkway' in Allegheny County, Pennsylvania."

unless the state officers were enjoined from proceeding under the statute. There is no question here of the State's right to create or designate a limited access highway. The only question is the plaintiffs' right to compensation. It must be assumed that the courts of Pennsylvania meant what they said in stating that the plaintiffs will be afforded a procedure through which the full measure of their rights under the United States Constitution will be preserved. Assuming, however, that there was a basis to support intervention by a court of equity, the District Court, we think, should nevertheless have declined to adjudicate this controversy.

The circumstances which should impel a federal court to abstain from blocking the exercise by state officials of their appropriate functions are present here in a marked degree. The considerations which support the wisdom of such abstention have been so thoroughly and repeatedly discussed by this Court as to require little elaboration. *Railroad Comm'n* v. *Pullman Co.*, 312 U. S. 496; *Chicago* v. *Fieldcrest Dairies*, 316 U. S. 168; *Spector Motor Co.* v. *McLaughlin*, 323 U. S. 101; *American Federation of Labor* v. *Watson*, 327 U. S. 582; *Government Employees* v. *Windsor*, 353 U. S. 364. See also *Alabama Comm'n* v. *Southern R. Co.*, 341 U. S. 341. Reflected among the concerns which have traditionally counseled a federal court to stay its hand are the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions. All those factors are present here.

At least one additional reason for abstention in the present case is to be found in the complex and varying effects which the contemplated state action may have upon the different landowners. Some of them may be completely deprived of access; others may have access to existing roads or service roads to be constructed; still

others may have access to the highway itself through points of ingress and egress established under the statute. In the state court proceedings the case of each landowner will be considered separately, with whatever particular problems each case may present.

There is no reason to suppose that the Commonwealth of Pennsylvania will not accord full constitutional scope to the statutory phrase "actual taking of property." [5] If, after all is said and done in the Pennsylvania courts, any of the plaintiffs believe that the Commonwealth has deprived them of their property without due process of law, this Court will be here.

*Reversed.*

MR. JUSTICE BRENNAN, with whom THE CHIEF JUSTICE joins, concurring.

A District Court's abstention from the exercise of its properly invoked jurisdiction is justified, in my view, "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve one of two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal-state relationships." *Louisiana Power & Light Co.* v. *City of Thibodaux, ante,* p.

---

[5] See Bowie, Limiting Highway Access, 4 Md. L. Rev. 219 (1940); Clarke, The Limited-Access Highway, 27 Wash. L. Rev. 111 (1952); Cunnyngham, The Limited-Access Highway from a Lawyer's Viewpoint, 13 Mo. L. Rev. 19 (1948); Duhaime, Limiting Access to Highways, 33 Ore. L. Rev. 16 (1953); Enfield and McLean, Controlling the Use of Access, National Academy of Sciences, National Research Council, Highway Research Board Bulletin No. 101 (1955), p. 70; and Reese, Legal Aspects of Limiting Highway Access, National Academy of Sciences, National Research Council, Highway Research Board Bulletin No. 77 (1953), p. 36.

32 (dissenting opinion). Both of these circumstances in which abstention is justified are present in this case. If the District Court directs the parties to the Pennsylvania courts, those courts may interpret the cutting off of access rights as a taking of property requiring the payment of compensation under Pennsylvania law. Such an interpretation would obviate any need for determination of the serious constitutional issue raised in the District Court.

Furthermore, the District Court's action has halted at the threshold the carrying out of a large-scale highway program before the state courts have had an opportunity to interpret the statute creating that program. This constitutes an unnecessary interference with state domestic policy creating undesirable friction in federal-state relationships.

Therefore, I concur in the judgment of the Court.

MR. JUSTICE DOUGLAS, dissenting in part.

We are all agreed that the District Court improperly enjoined the enforcement of the Pennsylvania statute. But I believe that these property owners are entitled to a declaratory judgment by the federal court, determining whether access to a highway is a property right, compensable under the Fifth Amendment (and made applicable to the States through the Fourteenth, *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226).

Congress has granted the District Courts jurisdiction over cases arising "under the Constitution," 28 U. S. C. § 1331, as this one does. That jurisdiction need not be exercised where it would be obstructive of state action and lead to needless interference with state agencies. *Alabama Comm'n* v. *Southern R. Co.,* 341 U. S. 341. It likewise need not be exercised where the resolution of state law questions—which are complex or unsettled—may make it unnecessary to reach a federal constitutional

question. *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101; *Chicago* v. *Fieldcrest Dairies,* 316 U. S. 168; *American Federation of Labor* v. *Watson,* 327 U. S. 582. And these principles are applicable in the main to declaratory judgment actions as well as to those where injunctions are sought. *Great Lakes Co.* v. *Huffman,* 319 U. S. 293.

In my view these cases are irrelevant here. We have at bottom in this case a question whether access to a highway is a property right which is compensable under the Fifth and Fourteenth Amendments. If it is compensable, as the District Court ruled, see 160 F. Supp. 404, 410–412, this is the most appropriate time to make the announcement. Particularly is this so when appellees in this case sought a declaration by the state court of their rights under the statute and were told that "their constitutional rights, *whatever they may be,* will be guarded and protected." Such a ruling by the District Court would not halt the highway program. But it might have an effect on engineering designs for new local service roads to provide substitute means of access to the highways; and it would make clear to the local authorities what the scope of their financial commitments in the undertaking is.

A determination of appellees' property rights would not be a premature decision because of the inability to forecast how the State will effect its goal of limiting access to its highway. Whether or not the landowners will be left landlocked or given access to substitute service roads goes only to the question of the amount of property "taken," if any. It has nothing to do with the question of the landowner's property right in access to a highway abutting his land.

We have witnessed in recent times a hostility to the exercise by federal courts of their power to declare what a citizen's rights are under local law in diversity cases (*Louisiana Power & Light Co.* v. *Thibodaux, ante,* p.

25) and in cases where federal rights are invoked. *Public Service Comm'n* v. *Wycoff Co.*, 344 U. S. 237; *Harrison* v. *NAACP, ante,* p. 167. I think the federal courts, created by the First Congress, are today a haven where rights can sometimes be adjudicated even more dispassionately than in state tribunals. At least Congress in its wisdom has provided since 1875 (18 Stat. 470) that the lower federal courts should be the guardian of federal rights. The judicial intolerance of diversity jurisdiction, noted by my Brother BRENNAN in his dissent in *Louisiana Power & Light Co.* v. *Thibodaux, supra,* seems to be spreading to other heads of federal jurisdiction as the decisions in this case and in *Harrison* v. *NAACP,*[1] *supra,* suggest. True it is, that the exercise of that power in some cases would be so utterly disruptive of state-federal relations as to make it undesirable. As a general rule, however, the federal courts should be responsible for the exposition of federal law. It should be their responsibility in cases properly before them under heads of jurisdiction prescribed by Congress to construe federal statutes and the Federal Constitution. There is no more appropriate occasion for the exercise of that jurisdiction than the present case which involves the question whether or not access rights constitute "property" in the constitutional sense.[2] That question concerns not state law but

---

[1] The *Harrison* case invoked federal jurisdiction not only under 28 U. S. C. § 1331 and § 1332 (diversity) but also under § 1343 (civil rights).

[2] Title 28 U. S. C. § 2201 permits a federal court to declare a party's rights in the case of an actual controversy. There is such a controversy here. Appellants have expressed their intention to declare the highway on which appellees' properties abut to be a limited access highway, and have consistently argued that appellees have no right to compensation, although they may be denied access to the highway which they previously had. This is enough to create an actual controversy which a federal court may settle if its processes are, as here, properly invoked.

a concept imbedded in the Bill of Rights. It is in no way entangled with local law. The Supremacy Clause of the Constitution makes all local projects bow to that concept of "property." And in my view there is no more appropriate tribunal for an adjudication of that issue than the Federal District Court, which in this case acted at the very threshold of this engineering project and made a ruling that informs the local authorities of the full reach of their responsibilities. This is not intermeddling in state affairs nor creating needless friction. It is an authoritative pronouncement at the beginning of a controversy which saves countless days in the slow, painful, and costly litigation of separate individual lawsuits in state viewers proceedings.