Jerry R. ENGLAND et al., Plaintiffs,

v.

LOUISIANA STATE BOARD OF MEDICAL EXAMINERS et al., Defendants.

Civ. A. No. 9292.

United States District Court
E. D. Louisiana.

Jan. 5, 1960.

J. Minos Simon, Lafayette, La., Floyd J. Reed, New Orleans, La., for plaintiffs.

Jack L. Simms, Leesville, La., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Louisiana Medical Society, intervenor.

St. Clair Adams, Jr., Adams & Reese, New Orleans, La., Robert F. LeCorgne, Jr., Ellis, Lancaster & King, New Orleans, La., for defendant.

Before JONES, Circuit Judge, and CHRISTENBERRY and WRIGHT, District Judges.

JONES, Circuit Judge.

The plaintiffs, forty in number, are graduates of schools teaching what is called by them the "Science of Chiropractic." They have brought this action against the Louisiana State Board of Medical Examiners seeking a declaration that the Louisiana Medical Practice Act, LSA–R.S. 37:1261 et seq. is unconstitutional as applied to them, and praying for an injunction against the continued enforcement of the statute as to them. The plaintiffs asked that a three-judge court be convened for a determination of the case pursuant to 28 U.S.C.A. §§ 2281, 2284. The defendants moved to dismiss. After a hearing before the Court with a single judge presiding, the Court, believing that Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, affirmed 274 U.S. 720, 47 S.Ct. 590, 71 L. Ed. 1324, was decisive of the constitutional issue, dismissed the cause for want of a federal question. The Court of Appeals, with Judge Wisdom dissenting, reversed and remanded. England v. Louisiana State Board of Medical Examiners, 5 Cir., 1958, 259 F.2d 626; 5 Cir., 1959, 263 F.2d 661. In remanding the cause, it was said by the Court of Appeals that "the plaintiffs are entitled to an opportunity to attempt to prove that chiropractic is such a useful profession or calling that they cannot be constitutionally excluded from its practice in Louisiana in the manner and form claimed to be attempted by the State Legislature and by the State Board of Medical Examiners." 263 F.2d 661, 665. The full opinion of the Court of Appeals relieves us of any more extended recital of the contentions made and the factual matters asserted.

Since the dismissal of the case by this Court and since it was before the Court of Appeals, the Supreme Court has clarified the principles of abstention and has perhaps extended them beyond the limits which some of us thought prevailed. City of Meridian v. Southern Bell Telephone & Telegraph Company, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed. 562; Louisi-

ana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed. 2d 1058; Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163; Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186. See Empire Pictures Distributing Company v. City of Fort Worth, 5 Cir., 1959, 273 F. 2d 529. These decisions, and the rules they set forth, require a consideration of the principles of abstention in the case before us.

In the Martin case, supra, the view, both majority and minority, of the Supreme Court on the requirements for application of the abstention doctrine were clearly stated. Mr. Justice Stewart, for the majority, said: "Reflected among the concerns which have traditionally counseled a federal court to stay its hand are the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions." 360 U.S. 219, 224, 79 S.Ct. 1034, 1037. Mr. Justice Brennan, speaking for the minority in a concurrence, quoted his dissent in the Thibodaux case in laying down these more restrictive prerequisites for abstention: "A District Court's abstention from the exercise of its properly invoked jurisdiction is justified, in my view, 'only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve one of two important countervailing interests; either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal-state relationships.'" Id., 360 U.S. at page 225, 79 S.Ct. at page 1038.

 Whichever of these views is followed, it seems that in this case there is ample justification for leaving the present question for decision by the state court. As the majority of the Court of Appeals stated: "It is of interest to note that the Supreme Court has never

changed its policy of reviewing with reluctance and self-restraint state regulations in the medical field, even though other state economic regulations have met a fluctuating substantive due process stand." 5 Cir., 263 F.2d 661, 673.

In this situation, the words of the Supreme Court in Harrison v. N. A. A. C. P., supra suggest a rule for our guidance: "This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447, as their 'contribution * * * in furthering the harmonious relation between state and federal authority * * *.' Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971." 360 U.S. 167, 176, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152.

It might be said that a problem is presented by a further reading of the passage cited from the opinion in Harrison: "In the service of this doctrine, which this Court has applied in many different contexts, no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass upon them." Ibid. The requirement that the state law not be "settled" is laid down since otherwise "Remission to those courts would involve substantial delay and expense, and the chance of a result different from that reached below, on the issue of applicability, would appear to be slight." City of Chicago v. Atchison, T. & S. F. Ry. Co., 1958, 357 U.S. 77, 84, 78 S.Ct. 1063, 1067, 2 L.Ed.2d 1174. See also Public Utilities Commission of State of California v. United States,

1958, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed. 2d 470.

It might be urged that the state law here in question has been interpreted and finally settled by the highest court of the state in Louisiana State Board of Medical Examiners v. Fife, supra. The Court of Appeals has, however, cast doubt on the settling nature of Fife. As justification for not following the Supreme Court's per curiam affirmance of Fife, as the District Court had done, the majority of the Court of Appeals stated: "Further, it is not clear that in the case closest in point, Louisiana State Board of Medical Examiners v. Fife, supra, there was actually and fully litigated and tried the issue of whether practitioners of chiropractic were engaged in the practice of a useful profession or calling which they had a lawful right to pursue unimpeded by requirements having no relation to such calling or profession." 5 Cir., 263 F.2d 661, 664.

■ It can be said that the issue as stated by the Court of Appeals is, in a degree, one of fact. But primarily the question is one of law, and it is for a court to determine as such. It is not the type of fact question involved in Allegheny County v. Frank Mashuda Co., supra, wherein abstention was held to be inappropriate. There the state law was settled that land could not be condemned for private use and the only question was whether the land in issue had in fact been condemned for private use.

In a determination of the issue presented there must be a reexamination of the questions raised, although imperfectly as the Court of Appeals would have it, in Fife. The rationale of abstention, as that doctrine has now been declared, would most certainly appear to require that this reexamination be initially made by the state court rather than by a federal court. The state court might effectively end this controversy by a determination that chiropractors are not governed by the statute. Their inclusion is, after all, not express. Further, the thrust of the plaintiffs' argument is that chiropractic is unrelated to medicine as medicine and this line of reasoning might lead to a limiting interpretation such as would render unnecessary a testing of the statute by the Constitution.

It would seem that if it is proper to permit a state to interpret and apply or limit one of its statutes before a federal court considers its constitutional validity, it would also be proper for the state to have the first opportunity to reinterpret and reapply and limit, if need be, a statute which the highest court of the State has previously held to be constitutional under the factual situation existing at the time of its decision.

■ It can be said that abstention by this Court will involve delay and additional expense for the parties. This may be admitted and the result is not changed. One who seeks to overturn precedents must be prepared for delay and expense. Where comity moves the federal courts to abstain, the cost in time and money is said to be justified by the resulting federal accommodation. Wright, The Abstention Doctrine Reconsidered, 37 Texas L.Rev. 815, 818.

We ought not to believe that there is no expectation that the state court will change its interpretation and this Court should therefore act at once. The subject for judicial inquiry, as posed by the Court of Appeals, is whether chiropractic "is no more entitled to recognition today than it was thirty odd years ago." 5 Cir., 259 F.2d 626, 627. The answer of the state court cannot be presumed one way or the other. It is appropriate that this Court stay its hand until the state has had a chance to act.

An order will be entered staying further proceedings in this Court until the courts of the State of Louisiana shall have been afforded an opportunity to determine the issues here presented, and retaining jurisdiction to take such steps as may be necessary for the just disposition of the litigation should anything prevent a prompt state court determination.