Floyd T. BROWN and J. Leland Brown,
d/b/a Floyd T. Brown & Son,
Appellants,

v.

PEARL RIVER VALLEY WATER SUPPLY DISTRICT, Appellee.

No. 18626.

United States Court of Appeals
Fifth Circuit.

June 30, 1961.

William L. Higgs, Jackson, Miss., Abram J. Chayes, Cambridge, Mass., of counsel, for appellants.

Clifford C. Chittim, H. V. Watkins, Jackson, Miss., Watkins, Pyle, Edwards & Ludlam, Jackson, Miss., of counsel, for appellee.

Before JONES and BROWN, Circuit Judges, and CARSWELL, District Judge.

JONES, Circuit Judge.

The Mississippi Legislature passed a statute[1] in 1958 known as the Pearl River Valley Water Supply District Act which authorized the creation of the appellee District. The Act provided that the Pearl River Industrial Commission should petition the chancery court of Hinds County, Mississippi, to organize and establish the District. The Act required that the Board of Water Commissioners, each county in the proposed district, and every municipality of a population of 10,000 should be made parties defendant to the proceeding. It was expressly provided that it was not necessary to name land-owners in the petition or to make them parties defendant. The statute directed that notices of a hearing should be

---

1. Miss.Laws 1958, S.B. 1724, Miss.Code 1942, Recompiled §§ 5956-51 et seq.

given by posting and by newspaper publication in each of the counties. The notice was to be addressed to the property owners and qualified electors in the proposed District, and command them to appear and show cause why the District should not be organized and established. If, after a hearing, the court should enter a decree creating the District, an election was to be held in each of the counties of the proposed district for a determination by the qualified electors as to whether such county would become a part of the District. Any person interested in or aggrieved by the final order of the court, and who was a party to the proceedings in the chancery court, was given a right of appeal to the Supreme Court within ten days.

The chancery court, by its decree, created and organized the District pursuant to the authorization of the statute. The District, embracing lands in several counties, was, by the terms of the statute providing for its creation, intended to further the welfare of the people of the State by the construction of dams, reservoirs and other works for preserving, conserving, storing and controlling the waters of the Pearl River and its tributaries for domestic, municipal, commercial, industrial, agricultural and manufacturing purposes, for recreational uses, for flood control, timber development, irrigation and pollution abatement. The Act gave the District the power to acquire property within or without the boundaries of the District by purchase, lease, gift, or otherwise except by condemnation. Power was given to acquire by condemnation property "within the project area not exceeding one quarter mile from the outside line of the 300 foot above sea level contour on each side of Pearl River." The Act authorizes the Board of Directors to determine what property is to be acquired and its determination is said to be conclusive in the absence of abuse of discretion or fraud.

The District is empowered to sell or lease property acquired by it for the purpose of furthering its business. Land not necessary may be sold to the highest and best bidder. Former owners have the right to meet the highest bid. One whose dwelling has been taken by condemnation may reacquire not exceeding forty acres of his former home site at the price paid him for it. Bonds of the District, to be issued by direction of the Board of Directors, were authorized for the purpose of providing funds to acquire property, construct and operate the projects and works and for the payment of incidental and related charges. The payment of the bonds is to be secured by the net revenues of the District, by a two-mill ad valorem tax levy and a special two-mill tax levy. Revenues, as defined in the Act, include all funds coming into the possession of the District.

The appellants, as plaintiffs in the district court, alleged that they were partners, owning about 280 acres of land in and in the area of the District. About 100 acres will be inundated and lands of about the same area owned by the appellants lie within the quarter mile strip surrounding the reservoir. The land is used by the appellants as a cattle farm and the residence of the appellant, J. Leland Brown, is located on the property. It is asserted by the appellants that the District intends to take their land lying within the quarter mile perimeter and use it, not for any proper purpose in connection with the construction of the reservoir, but for the purpose of reselling it at a tremendous profit and using such profit, together with funds received from the sale of similar property acquired in a like manner, in the financing of the project. Such a taking, say the appellants, is for a private purpose and prohibited by the due process provisions of the Fourteenth Amendment. This constitutional infringement, the appellants aver, so permeates the whole scheme of creating the District that the

Act in its entirety must be held to be invalid.

The appellants set forth in their complaint that they are precluded from raising in the courts of Mississippi the question as to the character of the use, whether public or private, because of a decision of the Supreme Court of Mississippi determining the question contrary to the contention they urge here. This barrier to obtaining any relief in the Mississippi courts has been raised, the appellants assert, by the decision in the case of Culley v. Pearl River Industrial Commission, 234 Miss. 788, 108 So.2d 390. The appellants sought an injunction against the condemnation of the appellants' land or, in the alternative, so much thereof as the District "may not acquire by virtue of the prohibition of the Due Process Clause."

The District filed its motion to dismiss the appellants' suit on the grounds that (a) there was no substantial Federal question, (b) an adequate remedy existed under the law of Mississippi, and (c) no irreparable injury was shown; and upon the further ground that the issues raised by appellants were completely adjudicated in the Culley case. In that suit a citation was issued and served on each of the counties, on the City of Jackson and on the Board of Water Commissioners. These were the defendants who were required by the Act to be defendants and who were named in the petition as defendants. Notices were posted and published in newspapers as required by the statute. These were directed to the property owners and qualified electors of the several counties, and to all persons interested in the creation of the District, commanding them to appear at a time fixed in the notice, to show cause why the District should not be created as prayed in the petition. Culley and another, who owned lands in the District, appeared and contested the creation of the District in the chancery court. A final decree was entered creating the District.

Hinds County appealed from the decree creating the District, stating that it was in favor of the project but appealed in order to have a determination of the constitutional questions. Culley and the other landowner challenged the constitutionality of the Act and the validity of the decree which purported to create the District. There were several questions raised by Culley, but his principal contention was that the Act came into conflict with constitutional provisions, with specific reference to Section 17 of the Mississippi Constitution, by empowering the District to acquire property by condemnation, not for a public use, and then to rent, lease, or sell it for private use. Such is the principal contention of the appellants in this cause, with specific reference to the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. The Supreme Court of Mississippi, in the opening paragraph of its somewhat extended opinion, stated that it did not agree with this opinion. It held the Act valid and affirmed the decree.

Among other things, it was said in the opinion of the Mississippi court that the evidence showed it was necessary and for the public purpose for the District to control the quarter mile perimeter; that it would presume that the District would manage, lease and sell lands acquired by condemnation only for public purposes; and that sales or leases by the District of land acquired by eminent domain must be so restricted as to carry out the public purposes and functions of the District. It was expressly adjudicated that the quarter mile perimeter, if taken by eminent domain, would be for a public use. This adjudication was repeated with the qualification, if such it be, that "whether the taking of a particular piece or parcel of property is necessary for the public use is, as held in Ham [Ham v. Board of Levee Commissioners, 83 Miss. 534, 35 So. 943] and Gwin [City of Greenwood v. Gwin, 153 Miss. 517, 121 So. 160], essentially a legislative question,

to be determined by the District; but the courts may interfere if the District's determination of the question of public necessity is the result of fraud or abuse of discretion."

In an informal ruling the district court concluded that no substantial federal question was presented, and in reaching its conclusion the court distinguished City of Cincinnati v. Vester, 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950. The question as to whether the appellants were bound, under res judicata, by the Culley decree was discussed but was expressly not decided by the court. The court expressed the view that if a federal question was presented, the case was such that a federal court should abstain from exercising its jurisdiction so that there might be a determination of the issues in the courts of the State. The district court entered a judgment dismissing the action without prejudice on the ground of the lack of a substantial federal question. Before us is the appeal from that judgment.

We are of the same view as the district court in its holding that the questions were of a kind that should be first submitted to the courts of Mississippi. The relief sought is a decree against a public body created by the State of Mississippi to enjoin the condemnation, in whole or in part, of the land of the appellants. Thus the relief sought may be proscribed by the statute [2] prohibiting federal injunctions against state court proceedings. In Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163, rehearing denied 361 U.S. 855, 80 S.Ct. 41, 4 L. Ed.2d 93, the Supreme Court held that a district court improperly refused to retain jurisdiction of a suit in which it was asserted that a Pennsylvania county was seeking to take private property for a private use. It is to be noted that in its opinion the court observed

that federal jurisdiction was based on diversity of citizenship. It pointed out that no determination of the state law was involved, as only fact issues were presented, and it stressed the absence of any claim for injunctive relief. In the case here there is no diversity of citizenship, the interpretation of the state statute is involved, and injunctive relief is sought.

■ The precedent most nearly in point is Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186, which was decided on the same day as Allegheny County v. Mashuda, supra. The district court entered an injunctive decree against officials of the State of Pennsylvania. The Supreme Court, in holding that the district court should have declined to adjudicate the controversy, stated the principles which we believe are controlling in this case. The Supreme Court said:

"The circumstances which should impel a federal court to abstain from blocking the exercise by state officials of their appropriate functions are present here in a marked degree. The considerations which support the wisdom of such abstention have been so thoroughly and repeatedly discussed by this Court as to require little elaboration. [Citing cases.] Reflected among the concerns which have traditionally counseled a federal court to stay its hand are the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions. All those factors are present here."

In this case it may also be said, all those factors are present here. The application of these principles requires an affirmance of the district court's judgment, although perhaps not on the pre-

<hr>

2. A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C.A. § 2283.

cise ground upon which it was placed by that court.

Consideration has been given as to whether, in applying the doctrine of abstention, the district court should have retained jurisdiction as was done in Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058, rehearing denied 360 U.S. 940, 79 S.Ct. 1442, 3 L.Ed.2d 1552. Our conclusion is that the order of dismissal was proper and there should have been no retention of jurisdiction. In the City of Thibodaux case an eminent domain proceeding, or expropriation, as it is called under the Civil Law, was removed by reason of diversity of citizenship to the federal court. The cause pending was itself the state court proceeding, although by removal pending in the federal court. The abstention was for the purpose of permitting a declaratory judgment of the Louisiana courts as to the meaning and validity of a Louisiana statute, and for the ultimate determination of compensation if the power of taking should be sustained. To perform this function, and to take further steps as might be required, the retention of jurisdiction was required. No such situation exists here, nor did such a situation exist in Martin v. Creasy, supra. We think, as did the district court, that a dismissal of the case was proper.

◼ We do not think the Mississippi courts are precluded from hearing the cause by the decision in Culley v. Pearl River Industrial Commission. Nor do we think the Mississippi courts are so disposed. This seems apparent from the language of the decision which recognizes the necessity of protecting constitutional rights. And see the subsequent opinion of the Supreme Court of Mississippi in Mississippi Power & Light Co. v. Blake, 236 Miss. 207, 109 So.2d 657.

The judgment of the district court is

Affirmed.