**Carl HILLIARD, Pressley L. Hilliard, Ruth R. Bookser and Edward F. Bookser, husband and wife,**

v.

**COMMONWEALTH OF PENNSYLVANIA acting By and Through the PENNSYLVANIA GAME COMMISSION and Glenn L. Bowers, Executive Director of the Pennsylvania Game Commission.**

**Civ. A. No. 69–748.**

United States District Court, W. D. Pennsylvania.

Jan. 26, 1970.

Lee C. McCandless, Charles T. Chew, Frank P. Krizner, Butler, Pa., for plaintiffs.

Robert J. Stock, Butler, Pa., for defendants.

## OPINION

GOURLEY, District Judge.

In this proceeding, plaintiffs seek to enjoin defendants from taking plaintiffs' farm lands by exercise of the pow-

er of eminent domain. Jurisdiction is founded solely upon the alleged existence of numerous questions arising under the Fourteenth Amendment to the United States Constitution. In response to the Complaint, defendants filed a Motion to Dismiss and an Answer, raising therein, among other defenses, the defenses of lack of subject matter jurisdiction and res adjudicata. A hearing has been held upon plaintiffs' request for preliminary injunction and defendants' Motion to Dismiss. Upon review of the pleadings, briefs, Stipulation of Facts and record of the hearing, I conclude that defendants' Motion to Dismiss must be granted.

Plaintiffs are the owners of three adjacent tracts of land located in Washington Township, Butler County, Pennsylvania. Plaintiffs Carl Hilliard and Pressley Hilliard own 78.9 acres and 82.-9 acres, respectively, and plaintiffs Ruth and Edward Bookser own, in tenancy by the entireties, 79.4 acres. All of the tracts are eminently fertile farmlands, containing topsoil sixteen feet in depth which has been deposited in the area of Butler County by the prehistoric glacier movement. Plaintiff Pressley Hilliard farms and maintains a high state of cultivation upon 350 to 400 acres of tillable land to be found in the three tracts in question and other adjacent thereto.

In 1964, the Pennsylvania Legislature enacted the Project 70 Land Acquisition Act[1] authorizing the Pennsylvania Game Commission to acquire lands in Butler and forty-two other Pennsylvania counties for the purpose of "conservation and propagation of game threatened by development in urban areas and for other wildlife conservation and recreation purposes."[2] Pursuant thereto, the Pennsylvania Game Commission drafted the Glades Waterfowl Project which contemplates the acquisition of 1533 acres of land in and about Butler County, Pennsylvania, and the creation of a 400 acre water impoundment or lake therein, for the purpose of attracting, propagating and conserving migratory waterfowl and small game. The Glades Waterfowl project also contemplates that the Game Commission will develop 300 of the aforesaid 1533 acres by sharecropping contracts pursuant to which private farmers will produce a crop three-fourths of which shall be for their own use and one-fourth of which shall be Japanese millet or food for the waterfowl or small game.

By letter of May 10, 1965, the Executive Director of the Pennsylvania Game Commission advised the Hilliards of the Game Commission's intention to acquire by purchase agreement, among a total of twenty-six properties in Butler County, the three tracts of land owned by plaintiffs herein. A few days thereafter, on May 14, 1965, the Pennsylvania State Planning Board approved the Game Commission's Glades Waterfowl Project and accorded to the Game Commission discretion to acquire the aforementioned twenty-six properties in fee or lesser portions thereof, where hardship or other factors might justify.

Subsequent to the action of the State Planning Board and prior to the Game Commission's filing of any declarations of taking with respect to the three properties in question, members of the State Game Commission negotiated with plaintiffs herein for the purchase in fee of the portions of their respective properties which would be within the contemplated boundaries of the impoundment or lake and, additionally, for the purchase of substantial flood easements over the remaining portions of plaintiffs' respective properties.[3] Said flood easements were to encompass sufficient portions of the lands not taken in fee to

1. Act of June 22, 1964, Special Sess., P.L. 131, No. 8, § 1 et seq., 72 Purdon's Pa. Stat.Ann. § 3946.1 et seq.

2. 72 Purdon's Pa.Stat.Ann. § 3946.17.

3. As I can best ascertain from the record, 35% to 40% of the Bookser property,

40% of the Carl Hilliard property, and 5% to 10% of the Pressley Hilliard property would be within the boundaries of the contemplated impoundment or lake; flooding easements would be necessary to anticipate the unusual one-hundred year flood which conceivably would in-

anticipate the most severe flood which might occur within a hundred year period.

In conducting the negotiation with plaintiff Edward Bookser, a representative of the Game Commission stated to him that, if the Booksers would not accept the price offered by the Game Commission for the portion of the Booksers' land to be purchased in fee and for the flood easement, the Game Commission would condemn the entire fee, for the reason that it would not cost the Game Commission more to condemn the whole property than to condemn a portion of it with flooding easements. It is acknowledged that, with respect to all three of the properties herein, the Game Commission would not have condemned the entire fees had the plaintiffs accepted the price offered by the Game Commission for the lesser acquisitions. It is a fair inference, and I so draw it, that the policy of the Game Commission was to avoid putting to a Board of Viewers a determination of the fair value of the lesser portions of plaintiffs' properties taken in fee and the flood easements over other portions, simply by declaring a taking upon the entire fees of plaintiffs' properties.

On April 7, 1967 and June 2, 1967, the Game Commission formally adopted a single Resolution condemning in fee the entirety of the three properties in question. On September 5, 1967, the Game Commission filed a Declaration of Taking describing as the interests taken the surface rights only to the three fees in question.

Plaintiffs, as condemnees, thereupon filed in the Court of Common Pleas of Butler County Preliminary Objections to the Declaration of Taking. Plaintiffs asserted therein five or more grounds of objection, one of which challenged that part of the Declaration which stated an intention to take only the surface rights to plaintiffs' properties. After hearing, the Court rendered an Opinion which sustained the aforementioned objection, rejected another and was silent upon the remaining objections. At the same time, the State Court granted leave to the Game Commission to amend the Declaration of Taking in the light of plaintiffs' sustained objection.

The Game Commission subsequently filed an amended Declaration of Taking, whereupon plaintiffs again filed Preliminary Objections, these clearly being constitutional in nature. After hearing, the State Court entered an Order dismissing the second Preliminary Objections and rendered an Opinion grounding the dismissal upon Section 406(c) of the Pennsylvania Eminent Domain Code of 1964[4], which provides that all preliminary objections must be raised at one time.

The State Court found that the constitutional objections were newly filed and were as applicable to the unamended Declaration of Taking as they were to the amended Declaration. It was thereupon concluded that plaintiffs had not raised these constitutional objections upon first opportunity and consequently had waived them.

Plaintiffs appealed from the Order dismissing their second Preliminary Objections to the Supreme Court of Pennsylvania, which affirmed per curiam. Plaintiffs did not petition for certiorari to the Supreme Court of the United States and the time for so doing has now elapsed.

Plaintiffs rather request this Federal District Court to enjoin the Game Commission from proceeding further with its condemnation.[5]

---

undate most of the Bookser property, 60% of the Carl Hilliard property, and 50% of the Pressley Hilliard property, in all cases flooding a substantial portion of land in cultivation. (R. 64, 80, 83, 84, Plf.Ex. 2, Deft.Ex. A)

4. Act of June 22, 1964, Special Sess., P.L. 84, Art. IV § 406(c), 26 Purdon's Pa. Stat.Ann. § 1–406(c).

5. While not altogether clear from the record, it appears that an award has been entered by a Board of Viewers in the State eminent domain proceeding.

**760**

I am met with the threshold question of whether this Court has jurisdiction over the subject matter of this action. As I read plaintiffs' Complaint, it alleges the existence of facts raising the following federal questions:

1. Whether the taking of plaintiffs' properties by the Game Commission with the intention, among others, to lease or contract out portions thereof to private sharecroppers, constitutes an unconstitutional taking for private use.

2. Whether the Game Commission's taking of plaintiffs' entire properties in fee rather than lesser portions thereof was an abuse of discretion and in bad faith.

3. Whether the lower State Court has denied plaintiffs due process of law by denying them a hearing upon federal constitutional questions on the ground that, by procedural default, plaintiffs waived the opportunity to raise those questions.

Plaintiffs clearly disavow any challenge to the constitutionality of the Project 70 Land Acquisition Act itself and, rather, direct their challenge to the constitutionality of a portion of the Game Commission's Glades Waterfowl Project, the actions of the Game Commission in pursuing the acquisition of plaintiffs' land, and the State Court adjudication.

■ I am of the opinion that the second issue presents a federal question which is substantial. Plaintiffs allege not only an abuse of discretion by the Game Commission in taking plaintiffs' lands in fee but also that the Game Commission exceeded its lawful authority and acted in bad faith. I am mindful that it is not the prerogative of the judiciary to review the extent of an eminent domain taking by an administrative agency in order to re-evaluate the necessity or perhaps also expediency of an extended taking. These are matters of administrative discretion. However, action of an administrative agency which is arbitrary, capricious, or in bad faith is not beyond the pale of judicial review.

United States v. Agee, 322 F.2d 139, 142 (6th Cir. 1963), Chapman v. Public Utility Dist. No. 1 of Douglas County, Wash., 367 F.2d 163, 167–168 (9th Cir. 1966). The prescription against arbitrariness, capriciousness or bad faith is no less applicable to State action under the Fourteenth Amendment than to federal action under the Fifth Amendment.

■ While I have thus concluded that plaintiffs have presented a substantial federal question conferring subject matter jurisdiction on this Court, nevertheless, I must find that the prior adjudication in the State eminent domain proceeding, as affirmed on appeal to the Supreme Court of Pennsylvania, forecloses plaintiffs from litigating herein each and every constitutional question raised. The doctrine of res judicata so requires. Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Patterson v. City of Newport News, Virginia, 364 F.2d 816, 817 (4th Cir. 1966), cert. denied, 385 U.S. 650, 87 S.Ct. 767, 17 L.Ed.2d 670 (1966), rehearing denied 386 U.S. 969, 87 S.Ct. 1018, 18 L.Ed.2d 126 (1967).

Plaintiffs raised, as condemnees in the State eminent domain proceeding, the first two grounds now asserted here. The Pennsylvania Eminent Domain Code of 1964 afforded the plaintiffs the opportunity to raise any and all defenses to the condemnation, whether constitutional in nature or otherwise, by preliminary objection in the eminent domain proceeding, prior to any determination of value by a Board of Viewers. The Court of Common Pleas of Butler County determined that plaintiffs ran afoul of the procedure prescribed by the Code and thereby waived the constitutional objections which plaintiffs sought to raise therein.

Plaintiffs contend that, since the first and second issues raised herein, concerning the constitutionality of the Game Commission's actions in taking plaintiffs' property, were never heard upon the "merits" in the State eminent domain proceeding, the adjudication rendered therein cannot conclude plaintiffs

here. For purposes of applying the principles of res judicata, I find to the contrary. For said purposes, the cause of action asserted in the eminent domain proceeding and the defenses raised therein were determined on the merits. See Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1946) and Warriner v. Fink, 307 F.2d 933 (5th Cir. Fla.1962), cert. denied, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963).

 With respect to the third issue raised herein, that the State trial court has not afforded plaintiffs procedural due process, I am also concluded from making a determination upon principles of res adjudicata. Once the State Court acquired jurisdiction of the subject matter and parties to the State eminent domain proceeding, the contention that said State Court denied plaintiffs due process of law only could have been entertained upon direct attack and not by collateral attack in a federal district court. Angel v. Bullington, *supra*, 330 U.S. at 186–190, 67 S.Ct. 657 (1946), Lavasek v. White, 339 F.2d 861, 863 (10th Cir. 1964).

The Order dismissing plaintiffs' second Preliminary Objections and foreclosing the raising of plaintiffs' constitutional claims in the State eminent domain proceeding was a final Order. See 26 Purdon's Pa.Stat.Ann. § 1–523 and Bullen v. DeBretteville, 239 F.2d 824, 829 (9th Cir. 1956), cert. denied Treasure Co. v. Bullen, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1956). That said adjudication may have denied plaintiffs due process of law could have been, but was not, specifically asserted upon appeal to the Supreme Court of Pennsylvania, which affirmed per curiam the Order below.

Moreover, following the decision of the Pennsylvania Supreme Court, plaintiffs yet had the opportunity to file a petition for writ of certiorari to the Supreme Court of the United States, wherein again they could have asserted the contention that the State Courts' procedural foreclosure of their original

constitutional claims in and of itself may have denied them due process of law. Martin v. Creasy, 360 U.S. 219, 225, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1958); Henry v. Mississippi, 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408; Angel v. Bullington, *supra*, 330 U.S. at 189, 67 S.Ct. 657. Plaintiffs' failure to afford themselves of their opportunities for direct attack by way of appeal and certiorari conclusively bars them from attempting to raise by collateral attack in this Federal District Court not only the original constitutional issues raised in the State eminent domain proceedings but also the constitutionality of the State Courts' procedural foreclosure of plaintiffs. Angel v. Bullington, *supra*, 330 U.S. at 189, 67 S.Ct. 657.

An appropriate Order is entered.

### ORDER

Now, this 26th day of January, 1970, defendants' Motion to Dismiss plaintiffs' Complaint is granted, and plaintiffs' Complaint is dismissed, with prejudice.