**Raymond M. HILL et al., Plaintiffs-Appellants,**

v.

**VICTORIA COUNTY DRAINAGE DISTRICT NO. 3 et al., Defendants-Appellees.**

No. 30606.

United States Court of Appeals,
Fifth Circuit.

April 20, 1971.

Rehearing Denied May 18, 1971.

Robert L. Burns, Will Sears, Sears & Burns, Houston, Tex., W. S. Fly, Fly, Cory & Moeller, Victoria, Tex., for Raymond M. Hill and others.

Weldon B. Mallette, Victoria, Tex., Crawford C. Martin, Atty. Gen. of Texas, Roland Allen, Troy C. Webb, Asst. Attys. Gen., Nola White, First Asst. Atty. Gen., Alfred L. Walker, Executive Asst. Atty. Gen., Roger Tyler, Asst. Atty. Gen., Austin, Tex., for intervenor-appellee.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

DYER, Circuit Judge:

Plaintiffs appeal from the District Court's dismissal of their complaint, in which they sought the empanelling of a three-judge court to declare unconstitutional and to restrain and enjoin the enforcement of Chapter 7, Title 128, and Articles 3266 and 3268, Vernon's Ann. Texas Revised Statutes, 1925. In the District Court and in this Court, plaintiffs have asserted that the Texas statutes, which provide for organization and operation of drainage districts and delineate a condemnation procedure for authorities exercising eminent domain power, violate the constitutions of Texas and of the United States. Because the District Court properly abstained from premature consideration of potential federal constitutional questions, we affirm.

Plaintiffs own a large tract of land located within the boundary of Victoria County Drainage District in Victoria County, Texas. When the Drainage District attempted to condemn a permanent easement across 81.55 acres and a temporary easement across 203.87 acres of their land, plaintiffs initiated the present action. The District Court issued a temporary restraining order, which has remained in effect as a stay of judgment or injunction pending appeal until this time. The State of Texas filed and the court granted an application to intervene. The court heard arguments on plaintiffs' petition for a three-judge court. Subsequently the District Court filed a memorandum and opinion comprised of findings of fact and conclusions of law and entered final judgment denying plaintiffs' prayer for an injunction

and petition for a three-judge court. The court concluded that plaintiffs had raised no substantial federal constitutional question, the existence of which is necessary for the convening of a three-judge district court. Furthermore, according to the District Court, the record disclosed that plaintiffs have an adequate remedy at law in the state courts to protect their asserted rights. Although the court entered judgment without entry of a formal order consolidating the hearing on the application for an interlocutory injunction with a trial on the merits, the District Court noted, and it is not disputed, that "[t]he parties have agreed in open Court that all of the material facts pertaining to the claimed federal constitutional question are of record."

Having reviewed the entire record, we have determined that the final judgment dismissing plaintiffs' complaint without prejudice was proper in the instant case. Certainly these circumstances do not warrant a federal court's consideration at this time of the statutory complexities confronting us. Reading the complaint and the remainder of the record has convinced us that answers to questions concerning unclear state law may well be dispositive of this controversy. To prematurely resolve the alleged federal constitutional problems might well be a waste of time, as well as a source of needless friction between federal and state judicial systems. See Railroad Commission v. Pullman Co., 1941, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971.

In Louisiana Power & Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 28–29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058, the Supreme Court said:

Mr. Justice Holmes set forth one differentiating characteristic of eminent domain: it is intimately involved with sovereign prerogative. And when, as here, a [drainage district's] power to condemn is challenged, a further aspect of sovereignty is introduced. A determination of the nature and extent of delegation of the power of eminent domain concerns the apportionment of governmental powers. * * The issues normally turn on legislation with much local variation interpreted in local settings. The considerations that prevailed in conventional equity suits for avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities are similarly appropriate in a state eminent domain proceeding brought in, or removed to, a federal court.

The special nature of eminent domain justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively—the courts of the State under whose statute eminent domain is sought to be exercised—rather than himself make a dubious and tentative forecast. * * * The justification for this power, to be exercised within indicated limits, lies in regard for the respective competence of the state and federal court systems and for the maintenance of harmonious federal-state relations in a matter close to the political interests of a State.

In two other eminent domain cases decided that same day, the Court reaffirmed this position. See Martin v. Creasy, 1959, 360 U.S. 219, 224, 79 S.Ct. 1034, 3 L.Ed.2d 1186; Allegheny County v. Frank Mashuda Co., 1959, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163. More recently, when the Court was faced with a challenge to state laws on both federal and state constitutional grounds, it concluded: "We think the federal court should have stayed its hand while the parties repaired to the state courts for a resolution of their state constitutional questions." Reetz v. Bozanich, 1969, 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed. 2d 68. In the present situation, we would be remiss if we did not follow the same path. We shall avoid, among other pitfalls, "unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional ques-

tions." Martin v. Creasy, *supra*, 360 U.S. at 224, 79 S.Ct. at 1037.

In this regard, the result reached in *Allegheny County* gives us little pause. Although the Supreme Court there held that a federal district court had erred in dismissing plaintiffs' challenge to a state eminent domain proceeding, it based its decision on several relevant factors distinguishing that case from the controversy *sub judice*. Included are: the federal court's assumption of jurisdiction on diversity grounds, the absence of a federal constitutional question, and the settled posture of state law. In *Allegheny County* the district court need have decided only "the purely factual question whether the County expropriated the respondents' land for private rather than for public use. The District Court would simply be acting as would a court of the State in applying to the facts of this case the settled state policy that a County may not take a private citizen's land under the State's power of eminent domain except for public use." Allegheny County v. Frank Mashuda Co., *supra* 360 U.S. at 190, 79 S.Ct. at 1063; *see* Martin v. Creasy, *supra*. In contrast, while plaintiffs here allege that the Drainage District has attempted to condemn their property for a private use, it is clear that this is not the lone issue which they have asked the federal court to resolve. Indeed, it is merely pendent to the state and federal constitutional questions and the state-law interpretation problems raised. *Cf.* Kaiser Steel Corp. v. W. S. Ranch Co., 1968, 391 U.S. 593, 88 S.Ct. 1753, 20 L. Ed.2d 835.

■ Likewise, we are unimpressed by the distinction between the district court's stay of proceedings in *City of Thibodaux* and the District Court's dismissal in the case *sub judice*. In *City of Thibodaux*, the district court acquired jurisdiction on diversity grounds: whether or not a federal question was involved it had a duty to decide the controversy. Unquestionably the district judge accepted his responsibility. He stayed proceedings only so that the parties might seek a declaratory judgment from the Louisiana courts concerning an ambivalent state statute. In effect, he offered the state courts an opportunity to promote decisional uniformity between judicial systems with regard to the statute but retained jurisdiction so that he could dispose of the litigation if the Louisiana courts did not determine the matter expeditiously. Louisiana Power & Light Co. v. City of Thibodaux, *supra* 360 U.S. at 30–31, 79 S.Ct. 1070. Here, however, the District Court's jurisdiction rests solely on federal question grounds: after the state courts resolve pertinent state-law issues, no substantial federal question—and no federal jurisdiction— may remain. *See, e. g.,* Fornaris v. Ridge Tool Co., 1970, 400 U.S. 41, 91 S. Ct. 156, 27 L.Ed.2d 174; Reetz v. Bozanich, *supra* 397 U.S. at 85–87, 90 S.Ct. 788; England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440. The District Court's refusal to exercise its jurisdiction at this time manifests its cognizance of this real possibility. Nevertheless, a dismissal without prejudice on abstention grounds no more adversely affects either party's rights than a stay of proceedings on the same grounds. In both cases, a litigant is not precluded from later recourse to a federal forum, if he preserves the right and can satisfy the jurisdictional requirements. *E. g.,* England v. Louisiana State Board of Medical Examiners, *supra*, 375 U.S. at 421–422, 84 S.Ct. 461.

■ Accordingly, we conclude that the District Court did not abuse its discretion in dismissing plaintiffs' complaint without prejudice. *See* Martin v. Creasy, *supra*; Louisiana Power & Light Co. v. City of Thibodaux, *supra*; *cf.* Burford v. Sun Oil Co., 1943, 319 U.S. 315, 331–334, 63 S.Ct. 1098, 87 L.Ed. 1424. *See also* United Mine Workers v. Gibbs, 1966, 383 U.S. 715, 725–727, 86 S.Ct. 1130, 16 L.Ed. 2d 218. Under the circumstances *sub judice*, dismissal on abstention grounds was proper. We dissolve our stay of judgment pending appeal entered on February 17, 1971.

Affirmed.