UNITED STATES of America

v.

**45,149.58 ACRES OF LAND, MORE OR LESS, situated IN DARE COUNTY, STATE OF NORTH CAROLINA and First Colony Farm, Inc., et al.**

**FIRST COLONY FARMS, INC., Simon B. Rich, Jr. and Robert N. Campbell, Jr.**

v.

**Harold BROWN, in his official capacity as Secretary, Department of Defense, Department of Defense Building, the Pentagon, Washington, D. C., et al.**

**Nos. 77–0029–CIV–2, 77–0030–CIV–2.**

United States District Court,
E. D. North Carolina,
Elizabeth City Division.

July 7, 1978.

W. B. Carter, Jr., Samuel G. Grimes of Carter, Archie & Grimes, Washington, N. C., John H. Hall, Jr., Elizabeth City, N. C., Edward A. McDermott, Jr., of Ragan & Mason, Washington, D. C., for defendants

in No. 77–0029–CIV–2, and for plaintiff in No. 77–0030–CIV–2.

George M. Anderson, U. S. Atty. by Bruce H. Johnson, Chief, Land and Natural Resources Section, Raleigh, N. C., Max E. Findley, Gary M. Peterson, Attys., U. S. Dept. of Justice, Land and Natural Resources Division, Washington, D. C., for plaintiff in No. 77–0029–CIV–2 and for defendants in No. 77–0030–CIV–2.

## MEMORANDUM OPINION AND ORDER

LARKINS, Chief Judge:

On January 12, 1978, this Court entered an ORDER which consolidated the two above-referenced actions pursuant to F.R. Civ.P. 42(a), as they present common questions of law. The January 12, 1978 ORDER further stated that the Counts contained in the Complaint in No. 77–0030–Civ–2, wherein First Colony Farms, Inc. [hereafter First Colony] is Plaintiff, were to be treated as objections and defenses to the Declaration of Taking and Complaint in Condemnation filed by the United States in No. 77–0029–Civ–2, without prejudice to First Colony's rights to further answer or otherwise plead.

The parties, in both actions, since the ORDER of consolidation, have treated the consolidated actions as separate procedural entities. There are currently before the Court motions which the United States has filed challenging Counts I through IV of the Complaint in No. 77–0030–Civ–2 (the totality of First Colony's Complaint), and Defenses I through NINE of the Defendant First Colony's ANSWER in No. 77–0029–Civ–2 (all of First Colony's Defenses save that of just compensation [the Tenth Defense]). The United States' motion in No. 77–0030–Civ–2 is a MOTION TO DISMISS; its motion in No. 77–0029–Civ–2 is a MOTION TO STRIKE, OR IN THE ALTERNATIVE A MOTION FOR PARTIAL SUMMARY JUDGMENT. The desired effect of the Government's MOTIONS in the two actions is the same: to seek the disposition and elimination of First Colony's objections to the take, and to narrow the issues involved in this litigation to that of just compensation.

The Court has exhaustively reviewed the MOTIONS in both actions, the RESPONSES to those motions, and is of the opinion that the dual ends of justice and judicial economy, as well as administrative control over these actions, would best be served by consolidating these MOTIONS for purposes of rendering a decision which will be consistent for both actions, and which will put this litigation upon the proper procedural track necessary for its satisfactory conclusion.

## I. PROCEDURE

Counts I through V in First Colony's Complaint in No. 77–0030–Civ–2, which the United States has moved to dismiss, are, as a practical matter, identical to and subsumed into the Defenses raised by First Colony in No. 77–0029–Civ–2. The relief sought by First Colony in No. 77–0030–Civ–2 is that which could be afforded should First Colony prevail in its objections and defenses raised in No. 77–0029–Civ–2. The parties have extensively briefed the issues involved in the aforementioned motions, and have additionally briefed issues which the Court felt necessary to its proper adjudication of the motions.

NOW THEREFORE, it is the holding of this Court that the MOTION TO DISMISS now pending in No. 77–0030–Civ–2 is hereby converted to a MOTION FOR SUMMARY JUDGMENT for purposes of this ORDER. The Court invokes its discretion in this matter for the reasons above-stated, and further notes that First Colony will not, in the Court's opinion, be prejudiced by this action, as both First Colony and the United States have extensively briefed both sets of motions dealing with the identical issues, and the Court is of the opinion that it has before it a wealth of information, provided by both sides, dealing with the issues involved. The Court makes specific reference to the mountain of affidavits provided it by First Colony to buttress its arguments against the timeliness and propriety and legality of the Government's ac-

tions, and furthermore, the Government has provided the Court with its documents, which documents were prepared in the course of its decision-making process which led to the Secretary's decision to acquire a fee interest in the property of First Colony. The Court has had the complete cooperation of counsel for both sides, and access to whatever information has been made part of the Record of this case.

The Court will proceed by grouping the various Counts of First Colony's Complaint in No. 77–0030–Civ–2 with the "sister" Objections and Defenses contained in its Answer in No. 77–0029–Civ–2, and dealing with each in turn.

## II. DISCUSSION

A) RE: COUNTS I & II of Plaintiff First Colony's Complaint in No. 77–0030–Civ–2;

FIRST, SECOND and THIRD DEFENSES of Defendant First Colony in No. 77–0029–Civ–2.

Counts I & II of First Colony's Complaint in No. 77–0030–Civ–2 contains allegations which are identical to the issues raised as Defenses in its FIRST, SECOND and THIRD DEFENSES in No. 77–0029–Civ–2. First Colony contends that the action taken by the Secretary in condemning the property it owned as a part of its holdings in Dare County, North Carolina, for use as a practice bombing range lacked the Congressional authority required by 40 U.S.C. § 257, and therefore the taking was unlawful. First Colony admits that Public Laws 94–367 and 94–431, upon which the Secretary relies as authority for the condemnation, do authorize the acquisition of an East Coast Range. First Colony does contend, however, that neither statute authorizes the condemnation of its holdings for that purpose. First Colony further contends that, in hearings before the Congress which preceded the passage of the two aforementioned statutes, the Secretary did not advise the Congress that the Dare County property would in fact be the site chosen for an East Coast Range, and further contends that, in hearings before the Congress which preceded the passage of the two aforementioned statutes, the Secretary did not inform the Congress that the Dare County property was laden with a "significant" amount of peat. In short, First Colony contends that when the Congress authorized the acquisition of an East Coast Range, it was unaware that the Dare County site would be selected, and that if it were selected that the selection would impair development of a "valuable energy resource".

First Colony further contends that, since the enactment of the above-referenced laws, the Congress has been alerted to the energy potential of the peat located in the area of the take. The Senate Report No. 95–295, dated May 18, 1977, specifically acknowledges First Colony's efforts to establish the commercial feasibility of peat-generated energy and the fact that the subject Dare County property encompasses a large peat deposit. The Senate Report further stated:

"The Committee strongly supports this effort and desires that exploration of and access to these deposits not be restricted. *The Air Force has indicated purchase of the land will not constrain access, and that arrangements would be made similar to those now in effect for the commercial harvesting of timber. While the Committee has no reason to doubt that this will be the case,* it feels compelled to notify the Air Force that it considers free access to those deposits to be a condition of purchase. Based upon this specific direction, no further appropriations or other statutory measures would seem necessary at this time." [emphasis added by the Court]

On or about November 23, 1977, the Military Construction Subcommittee of the Appropriations Committee of the United States House of Representatives directed that an investigation and study of the Air Force and Navy requirements for an East Coast Range be conducted and that possible alternative sites other than the Dare County property be examined. By a letter dated December 16, 1977, the Honorable Gunn

McKay, Chairman of the aforementioned Subcommittee, advised the Secretary of the study, stating in part:

"[b]ecause this study has just begun and will be completed in a short period of time, I request that the Air Force take no action in regard to acquisition of the Dare County range until the Committee has had the opportunity to examine this study."

First Colony contends that the foregoing Congressional actions (the Senate Report and Congressman McKay's letter) limited the authority of the Secretary to specifically condemn the subject Dare County property for use as an East Coast Range until the study referenced above, and which the Court has presently in its possession for *in camera* inspection, was completed and reviewed by the Committee AND free access to the peat mentioned in the area of the Range was guaranteed. First Colony further contends that when the Secretary filed the Declaration of Taking and Complaint in Condemnation on December 28, 1977, he had not fulfilled the conditions outlined in the next preceding paragraph, and therefore the action was void *ab initio* as unauthorized.

First Colony next contends that, assuming *arguendo* that the Secretary had the requisite authority to acquire an East Coast Range, the institution of the condemnation action was nevertheless beyond the scope of that authority and is therefore unlawful under 40 U.S.C. § 257. The gravamen of this argument is that Congress does not authorize arbitrary or capricious actions, or those taken in bad faith. In support of this contention, First Colony alleges that between 1974 and the institution of the condemnation action in late 1977, the Air Force and the Navy had been utilizing the Dare County Range pursuant to a lease with First Colony. The lease had a term which was to expire on or about June 30, 1979, and provided for a fair rental rate of $500,-000 per year, which was equivalent to the fair rental value established by Government appraisers in 1974. Further, as a result of First Colony's awareness of the insistence of the Government that the title to the Dare Range property be acquired by the end of 1977, First Colony requested the United States, through its negotiating agent, to delay any such action pending completion of and Congressional review of the study ordered by Congressman McKay's Subcommittee, and also for the reason (so stated by First Colony) that the parties could arrive at an agreement on access to the peat situated on part of the range [reference: Senate Report No. 95–295]. First Colony offered, during any delay caused by the granting of its request, to allow the Air Force continued use of the range, and also that any rental paid in the interim be applied to the ultimate award should condemnation proceedings be consummated, and the Dare County property be ultimately chosen as the site for the East Coast Range.

First Colony alleges bad faith and arbitrary and capricious action by the Secretary in three particulars: first, by taking the property without any assurance that the peat involved could be reasonably, feasibly and safely harvested consistent with military operations; second, by acquiring title prior to completion of the McKay Subcommittee's report on alternate sites, the result of which study could have been an avoidance (in First Colony's opinion) of the conflicting interests of military operations and peat harvesting; and third, taking the fee when First Colony had offered a reasonable alternative during any delay which occurred due to the completion of the McKay Subcommittee Report and its review by the Congress.

The Court will now address the following issues, which are the dispositive issues in Counts I & II of the Complaint in No. 77–0030–Civ–2 and the FIRST DEFENSE and SECOND DEFENSE and THIRD DEFENSE in the Answer in No. 77–0029–Civ–2:

1) WHETHER, AS A MATTER OF LAW, THE SECRETARY POSSESSED THE REQUISITE CONGRESSIONAL AUTHORITY UNDER 40 U.S.C. § 257 TO TAKE THE SUBJECT PROPERTY?

2) WHETHER, ASSUMING THE SECRETARY DID HAVE THE REQUISITE AUTHORITY, THE TAKE WAS NEVERTHELESS VOID *AB INITIO* DUE TO THE ARBITRARINESS AND CAPRICIOUSNESS OF THE SECRETARY'S DECISION, AND ALSO DUE TO THE BAD FAITH OF THE SECRETARY'S ACTION AS EVIDENCED BY HIS REFUSAL TO ACCEPT FIRST COLONY'S DELAY PROPOSAL?

1) *THE SECRETARY POSSESSED THE REQUISITE AUTHORITY TO TAKE THE DARE COUNTY PROPERTY, AND DID NOT EXCEED HIS—THAT AUTHORITY IN SPITE OF CONGRESSIONAL REQUESTS FOR QUALIFICATIONS ON HIS AUTHORITY TO TAKE THE SUBJECT PROPERTY.*

a) STATUTORY AUTHORITY.

i) TO U.S.C. § 2663 provides in part:

(a) The Secretary of a military department may have proceedings brought in the name of the United States, in a court of proper jurisdiction, to acquire by condemnation any interest in land, including temporary use, needed for—

(1) the site, construction, or operation of fortifications, coast defenses, or military training camps * * *.

ii) 10 U.S.C. § 9773 provides, *inter alia*:

(a) The Secretary of the Air Force shall determine the sites of such additional permanent air bases and depots in all strategic areas of the United States and the Territories, Commonwealths, possessions, and holdings as he considers necessary. He shall determine when the enlargement of existing air bases and depots is necessary for the effective peacetime training of the Air Force.

\* \* \* \* \* \*

(d) In carrying out this Section, the Secretary, on behalf of the United States, may acquire title, in fee simple and free of encumbrance, to any land that he considers necessary—

\* \* \* \* \* \*

(3) by purchase or condemnation, if acquisition by gift or exchange is impracticable.

iii) The Military Construction Act, 1977, Pub.L. 94–431, 90 Stat. 1349, provides, at 90 Stat. 1355 and 1357:

Sec. 301. The Secretary of the Air Force may establish or develop military installations and facilities by acquiring, constructing, converting, rehabilitating, or installing permanent or temporary public works, including land acquisition, site preparation, appurtenances, utilities and equipment, for the following acquisition and construction:

\* \* \* \* \* \*

TACTICAL AIR COMMAND

\* \* \* \* \* \*

East Coast Range, $7,500,000.

\* \* \* \* \* \*

It is apparent from the hearings held on the authorization act for 1977 that the Dare County property was the range being considered:

EAST COAST RANGE

The continuing increase in the cost of leasing large tracts of land for defense related purposes has made it necessary for the Air Force to reassess purchase of land in lieu of continued leasing. As a result, this year's program includes the fee purchase of land for an east coast range.

The Dare County Range was established in 1964 as a joint Air Force/Navy air-to-ground weapons range. In addition, through fiscal year 1976, over $3 million will have been paid out in rent. The current annual lease cost is $500,000, and we do not see a stabilizing of this in the future.

We consider an east coast range to be a vital facility necessary to provide uninterrupted mission training in support of current and future aircraft in the DOD inventory.

The purchase of an east coast range is the only economical alternative to continued escalation in leasing.

*Act to Authorize Certain Construction at Military Installations: Hearings on H.R. 11833 Before the Subcomm. on Military Installations and Facilities of the House Comm. on Armed Services, 94th Cong. 2d Session, 389–390.*

The Military Construction Appropriation Act, 1977, Pub.L. 94–367, 90 Stat. 993, appropriated $788,079,000 to be utilized, in part, for acquisition of military installations and facilities for the Air Force as authorized in military construction acts.

b) NATURE AND EFFECT OF CONGRESSIONAL REQUESTS TO THE SECRETARY WITH REGARD TO ALTERNATE SITES AND ACCESS TO PEAT DEPOSITS ON DARE COUNTY RANGE PROPERTY.

The question is presented whether the Senate Report of May 18, 1977, together with the letter-request by Congressman McKay of December 16, 1977, can be construed and given binding and controlling effect to the course of action available to the Secretary with regard to the Dare County condemnation; specifically, whether these instructions altered and limited his discretion in this matter to such an extent, if at all, as would strip the Secretary of the authority which he used to initiate the condemnation. First Colony alleges and contends that the two requests by the Senate and House Committees show that the Secretary acted without proper authority, and that his action, and the condemnation of the Dare County property, are void *ab initio*, as a result.

The Court notes that at the time of the filing of the Declaration of Taking and Complaint in Condemnation, as well as now, there has been no law passed by the Congress and enacted into law which modifies the discretionary authority granted to the Secretary by Public Laws 94–431 and 94–367. The Senate Appropriations Committee in reporting on the Military Construction Appropriation Bill of 1978, whose report has been mentioned at length heretofore, commented on the wish of the Committee that the Dare County peat deposits be freely accessible. This is well and good; however, this Court is of the opinion, and now holds as a matter of law, that the pronouncements of the Senate Committee cannot override or modify an action adopted by the full Congress and approved by the President. Nor does the letter which Congressman McKay wrote to the Secretary have any effect; the desires of these individuals and committees cannot change, in *ex post facto* fashion, the intent and purpose of prior legislation. *Fletcher v. Housing Authority*, 525 F.2d 532, 535 (6th Cir. 1975). Furthermore, the Court notes that the Supreme Court has stated that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Waterman Steamship Corp. v. United States*, 381 U.S. 252, 269, 85 S.Ct. 1389, 1398, 14 L.Ed.2d 370, reh. den. 382 U.S. 873, 86 S.Ct. 17, 15 L.Ed.2d 114 (1965); *United States v. Philadelphia National Bank*, 374 U.S. 321, 348–349, 83 S.Ct. 7715, 10 L.Ed.2d 915 (1963); *Price v. United States*, 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960). The Court is not unaware of the delicacy of relations between the military departments and the Congress on the matter of appropriations; however, the decision to proceed with the condemnation in spite of the obvious Congressional desire to have the matter further investigated is a policy matter, and not one for this Court to become involved in. Furthermore, the Congress, should it decide that it does not like what the Secretary has done, may, under Article IV, § 3, cl. 2 of the Constitution, require the Air Force to divest itself of title to the Dare County property. Congress has not so acted, and the Court now holds, as a matter of law, that the Secretary was acting within the parameters of and in accordance with, proper statutory authority at the time of the take in December 1977; the Court further holds that the requests by the Senate and House Committees were and are of no binding effect on the Secretary, and IT IS SO ORDERED.

2) *THE SECRETARY DID NOT ACT IN AN ARBITRARY AND CAPRICIOUS MANNER, NOR WAS THE DECISION TO PROCEED WITH THE CONDEMNATION MADE IN BAD FAITH.*

a) SCOPE OF JUDICIAL REVIEW.

 First Colony contends that the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, apply in this action, and that the Secretary's decision is judicially reviewable under 5 U.S.C. § 704, and further that the standard for review is that found in § 706. The Court disagrees vehemently, and now holds as a matter of law that the Administrative Procedure Act does not apply to judicial review in condemnation actions. *United States v. 1,550.44 Acres of Land, etc.,* 369 F.Supp. 1078 (D.N.D.1974); *Hilliard v. Commonwealth of Pennsylvania, etc.,* 308 F.Supp. 756 (D.Pa.1970), affirmed, 438 F.2d 92 (3d Cir. 1971); *United States v. 113.81 Acres of Land, etc.,* 24 F.R.D. 368 (D.Cal.1959).

Despite the inapplicability of the Administrative Procedure Act as a vehicle for review in this action, Federal Rule of Civil Procedure 71 does provide for judicial review under its aegis of objections and defenses of the condemnee. As First Colony is alleging arbitrary and capricious actions and bad faith, the Court will consider this objection. Furthermore, as a vehicle for its analysis on this issue, the Court hereby borrows the analysis on bad faith, etc., from a case brought under the Administrative Procedure Act, and decided by the Supreme Court. *Camp v. Pitts,* 411 U.S. 138, at 142, 93 S.Ct. 1241, at 1244, 36 L.Ed.2d 106 at 111 provides, in part:

> "The appropriate standard for review was accordingly whether the Comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5 U.S.C. § 706(2)(A). In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.
>
> "If . . . . there was such failure to explain administrative action as to

frustrate effective judicial review, the remedy was not to hold a de novo hearing but, as contemplated by Overton Park [*Overton Park v. Volpe,* 401 U.S. 402, [91 S.Ct. 814, 28 L.Ed.2d 136]], to obtain from the agency, either through affidavits or testimony, such additional explanation or the reasons for the agency decision as may prove necessary. We add a caveat, however. Unlike *Overton Park,* in the present case there was contemporaneous explanation of the agency decision. The explanation may have been curt, but it surely indicated the determinative reason for the final action taken: the finding that a new bank was an uneconomic venture in light of the banking needs and the banking services already available in the surrounding community. The validity of the Comptroller's action must, therefore, stand or fall on propriety of that finding, judged, of course by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded for further consideration."

The Court has in its possession the much-argued-over McKay Subcommittee Report for *in camera* inspection. However, the Court shall not use it as a basis for its decision today for the reasons so eloquently set out in the next-preceding quote from *Camp v. Pitts.* The Court is basing its decision on this motion on the record before it, which record was available to the Secretary at the time he made the decision to proceed with the condemnation action, rather than to continue leasing the property in Dare County.

b) THE DECISION TO PROCEED WITH THE CONDEMNATION WAS NOT ARBITRARY OR CAPRICIOUS, AND THE RECORD SHOWS UNQUESTIONABLY THE LACK OF ANY ARBITRARY OR CAPRICIOUS CONDUCT ON THE PART OF THE SECRETARY.

Although the Court has ruled that the Secretary did not have to heed, as a legal

requirement, the requests of the Senate and House Committees with regard to access to the peat on the Dare County property, the Court does feel that the actions taken by the Secretary in this regard have a bearing on the objections and defenses raised by First Colony concerning the allegedly arbitrary and capricious nature of the take. The record amply illustrates that the Secretary took steps to become aware of the extent of the peat deposits on the Dare County range property. In a report submitted to the Deputy Assistant Secretary (Installations) of the United States Air Force in December, 1977, POTENTIAL OF PEAT AS ENERGY SOURCE, by Anand J. Apte, Reviewed by John D. Peters [prepared by System Development Corporation of McLean, Virginia], the peat deposits located in the Dare County area were analyzed for the Secretary. First Colony has attacked this report as "self-serving". The gist of the Report is that the value of the peat as an energy source for the Dare County area is somewhat less than that propounded by First Colony. However, the point the Court is making is that the Secretary ordered and received a report, and had it before him before the institution of the condemnation proceedings. This alone leads the Court to feel that, at least with regard to First Colony's charge that the Secretary's action was arbitrary and capricious, the action was not based on lack of information.

Furthermore, the terms of the Declaration of Taking, when compared with the terms of the lease agreement between the United States and First Colony, which lease has been made a part of the record of this case by ORDER of July 3, 1978, it is apparent that the Secretary recognized the wishes of the Congress, and also the importance of First Colony's access to the peat, consistent with military purposes. In the lease, as well as the terms of the Declaration of Taking, the Dare County Range has two distinct parts with regard to access to timber and peat deposits: one area, the eastward area, is severely restricted, as it is the target area. In the lease, access was limited to times when the tract was not in use by the Government and after clearance for entry. In the Declaration of Taking, the terms of entry to the eastern area of the Range are contingent upon the outcome of "good faith" negotiations between the Air Force and First Colony. The distinction between the two is unmistakable: the Declaration of Taking, in this Court's opinion, provides First Colony with much more leverage with regard to access to the peat than did the lease. In addition, under the terms of the Declaration of Taking, the restricted eastward area is much smaller than the same area was under the lease, thus providing First Colony with access, free access, to more of the condemned land than it had under the lease. So, even given the fact that the Secretary did not have to heed the requests of the Congress, the Court is of the opinion that the Secretary went an "extra mile" in attempting to make immediately available more land under the take, and to provide a procedural vehicle under which First Colony has a better chance of further access, consistent as far as will be practical with military uses of the condemned fee. The Court again notes that this does not appear to have been an arbitrary or capricious action, but rather a calculated and sincere attempt to "square" the requests of the Congress with the Air Force's primary mission of national defense preparedness.

The Court has before it, as a part of the record in this action, the Air Force's ENVIRONMENTAL DETERMINATION, FEE ACQUISITION OF LAND FOR EAST COAST RANGE, dated 16 April 1976; the Court as well has the Air Force's DETAILED ENVIRONMENTAL STUDY ON FEE ACQUISITION OF LAND FOR EAST COAST WEAPONS RANGE, prepared in 1975, both of which discuss the possibility and feasibility of alternate sites for the range (over 30 other sites were discussed and discarded as possibilities); additionally, the Air Force worked up a SOCIO–ECONOMIC IMPACT ASSESSMENT OF THE FEE ACQUISITION OF THE DARE COUNTY RANGE, NORTH CAROLINA, as well as the PEAT AS ENERGY SOURCE report previously mentioned.

The Court has read each of these documents and reviewed the conclusions and recommendations of each, and is of the opinion that the Secretary's decision to proceed with the condemnation was not arbitrary or capricious, and

IT IS SO ORDERED.

### c) THE DECISION OF THE SECRETARY TO PROCEED WITH THE CONDEMNATION WAS NOT MADE IN BAD FAITH.

First Colony contends that the Secretary acted in bad faith in that he did not delay the acquisition of the Dare County property even after First Colony made what it contends was a reasonable offer to cover the delay attendant with waiting for the Congressional report for the McKay Subcommittee and the peat access details to be worked out. As before, the Air Force had no duty to accept the offer or its terms, but the action taken by the Secretary does need to be analyzed through the eyes of a "good faith" analysis, as the objection has been tendered on this ground. The Court now holds, as a matter of law, that, based upon the foregoing, the Secretary has exhibited no bad faith in failing to delay the acquisition of the fee and refusing to accept First Colony's offer. The Secretary had a thorough record before him, the Air Force had made tremendous efforts in its Declaration of Taking to enlarge the area in which First Colony would have unrestricted access to peat and timber, as well as the negotiation procedure worked out for access to the severely-restricted area. The Court cannot, and will not, on the basis of the record before it, hold that the Secretary acted in bad faith, and the Court does not find in the record any showing that the Secretary acted other than in the interests of saving financial resources for the Government and in the furtherance of the national defense.

Accordingly, the Government's MOTION FOR PARTIAL SUMMARY JUDGMENT in No. 77–0029–Civ–2 with regard to the FIRST, SECOND and THIRD DEFENSES of First Colony, and the Government's MOTION FOR SUMMARY JUDGMENT as to

Counts I & II of the Complaint in No. 77–0030–Civ–2 are hereby ALLOWED, and

IT IS SO ORDERED.

### B) RE: SEVENTH, EIGHTH and NINTH DEFENSES of First Colony Farms in No. 77–0029–Civ–2.

First Colony claims that Paragraphs 5(a)[1] and 5(a)[2] of the Government's Complaint in Condemnation fail to state claims upon which relief can be granted because the descriptions provided by the Government are so vague that they fail to identify legally-recognizable estates. First Colony also alleges and claims that those same paragraphs fail in part to conform to the requirements of Rule 71A(c)(2) of the Federal Rules of Civil Procedure, for the same reason stated immediately above. First Colony finally contends that Paragraphs 3(a)(1) and 3(a)(2) of the Government's Declaration of Taking (which description is identical to Paragraphs 5(a)(1) and 5(a)(2) of the Complaint in Condemnation) fails to conform to the requirements of 40 U.S.C. § 258a, and are therefore invalid.

The Court now holds, as a matter of law, that the description of the estate taken and the estate reserved to First Colony is clearly stated, and adequately described. The Court is of the opinion that First Colony's objection here on the grounds of lack of clarity of description of the estate is misplaced; rather, the principal problem First Colony seems to be having with the take is the extent to which it will have access, if at all, to the peat in question. The description in the above-referenced Paragraphs is clear enough: what First Colony is really getting at is the value of what has been left to them. The access problem, and the practical realities associated with that issue, is one better left for their TENTH DEFENSE, which speaks to just compensation.

ACCORDINGLY, in accordance with the foregoing, it is the holding of this Court that the Government's MOTION FOR PARTIAL SUMMARY JUDGMENT as to the SEVENTH, EIGHTH and NINTH DE-

FENSES of First Colony in No. 77–0029–Civ–2 is hereby ALLOWED, and

IT IS SO ORDERED.

C) RE: COUNT IV of First Colony's Complaint in No. 77–0030–Civ–2; FIFTH DEFENSE of First Colony in No. 77–0029–Civ–2.

 First Colony has alleged and contends that the Government has failed to comply with the National Historic Sites Act, 16 U.S.C. § 470f, by effecting the condemnation action. There is a question of fact, as shown by the pleadings, as to whether or not there exist eligible buildings on the area of the take. However, First Colony has not stated a claim on which relief can be granted, other than that this Court hereby directs the Air Force to conduct a survey of the area taken to ascertain whether or not such alleged sites exist, and if so, to comply with the Act.

Also, the Act is not a valid defense to a condemnation action, and thus, save this Court's requirement that the Air Force investigate as above-ordered, the Government's MOTION FOR PARTIAL SUMMARY JUDGMENT as to the FIFTH DEFENSE in No. 77–0029–Civ–2, and its MOTION FOR SUMMARY JUDGMENT in No. 77–0030–Civ–2 are hereby ALLOWED, and

IT IS SO ORDERED.

D) RE: FOURTH DEFENSE of First Colony in No. 77–0029–Civ–2; COUNT III of the Complaint in No. 77–0030–Civ–2.

 First Colony contends and alleges that the Air Force has failed to comply with the requirements of the National Environmental Policy Act ("NEPA") for an environmental impact statement (EIS) prior to commencing the instant condemnation action. The Court notes at the outset, and holds as a matter of law, that there is no valid defense in a condemnation action based on an allegation, even if true, that the agency did not comply with NEPA. Furthermore, the Court now holds as a matter of law that First Colony's Count III in

its Complaint in No. 77–0030–Civ–2 fails to state a claim on which relief can be granted, as private litigants can recover no money damages for an agency's failure to file an EIS, even if required. Accordingly, the Government's MOTION FOR PARTIAL SUMMARY JUDGMENT as to the FOURTH DEFENSE in No. 77–0029–Civ–2 and its MOTION FOR SUMMARY JUDGMENT in No. 77–0030–Civ–2 as to COUNT III of the Complaint in that action, are hereby ALLOWED, and

IT IS SO ORDERED.

E) RE: SIXTH DEFENSE in No. 77–0029–Civ–2; COUNT V in No. 77–0030–Civ–2.

First Colony contends that the Air Force has violated its own rules, regulations, policies and precedents by effecting the condemnation action without either complying with NEPA or the National Historic Sites Act. The Court will withhold decision on the National Historic Sites Act issue pending the outcome of the investigation ordered in C) above. With regard to whether or not the Air Force has violated its own regulations, etc., with regard to NEPA, discussion is in order.

 Before the Court can decide whether the Air Force has violated its own procedures, etc., the question whether an EIS should have issued must be addressed. The Court now holds that for purposes of determining the propriety of the Air Force's decision and determination that the condemnation was not "a major federal action significantly affecting the quality of the human environment" under 42 U.S.C. § 4332(c), the Administrative Procedure Act is applicable for purposes of reviewing the instant administrative decision not to order an EIS prepared.

 The Air Force determined that the condemnation action was a major federal action, but also determined that it would not significantly affect the quality of the human environment. For the Dare County Range, the Air Force conducted a broad inquiry into the possible consequences of

the proposed acquisition. The Court has already made reference to the detailed environmental evaluations and the evaluation of the socioeconomic impact of the condemnation, as well as the peat issue materials prepared by the Air Force in contemplation of the take. In these documents reference is made to the fact that the Air Force considered ordering the preparation of an EIS, but the decision was finally made that an EIS would not be necessary in light of the thorough studies made on the environmental aspects of the condemnation. Notice of the determination not to prepare a comprehensive EIS was published in the Federal Register on June 3, 1976. Vol. 41 Fed.Reg. No. 108. A brief statement of the reasons underlying the determination that the acquisition would not be a major federal action with significant, adverse effect on the environment was set forth and comments were invited.

The formal environmental assessment explored in some depth the ramifications of the Dare County range acquisition. Relationship of the proposed action to land use policies was discussed, along with the probable impact upon the environment as to air quality, water quality, noise, fish and wildlife. Socioeconomic impact and possible alternatives to the proposed course of action were also evaluated. In addition, a statement of unavoidable adverse impacts was included with a suggestion for mitigation. The Court concludes that the environmental assessment thoroughly evaluated both positive and negative aspects of the acquisition. The Court further notes that, in the detailed environmental studies, no mention was made of the peat deposits or its potential. However, the Air Force did commission a peat study, previously mentioned in this order.

The Court is of the opinion, and hereby holds as a matter of law, that the conclusion reached by the Secretary not to have an EIS prepared was arrived at properly, and in the absence of arbitrariness, capriciousness and bad faith. The Record supports this determination, and IT IS SO ORDERED.

One common thread which runs through First Colony's contentions and allegations concerns its position that the Air Force is contemplating a huge intensification in use of the Dare County Range. There appear to be conflicting figures used by both sides in this litigation as to what the current use is, and what is "normal" for the present, and what is anticipated in terms of use-hours for the range for the future. The Court, in its perusal of the environmental studies submitted by the Air Force, noted in more than one part of the assessment that further studies may be necessary in the event of any intensification of use; specifically, reference is made to the effect of noise levels on wildlife, and the use of certain metals which, if oxidized by burning or other forms of decomposition, may have an adverse effect upon the quality of water in the area. First Colony has alleged that the Air Force is contemplating a 100% increase in use after the take; if true, the Court is of the opinion that further environmental study is warranted. However, the Air Force has stated in its briefs and affidavits that such intensification is illusory, and is simply not so. Nevertheless, the Court now holds that the Air Force, should it choose to intensify use of the Dare County Range over and above the 1977 level of 3,200 hours (combined hours usage by both Air Force and Navy), shall make further study of the environmental consequences BEFORE such intensification is carried out, and IT IS SO ORDERED.

The fact that the Court has placed this limitation on the Air Force and Navy with regard to intensification in use is not directly germane to the objections to the take lodged by First Colony, however. The Court is convinced, on the basis of the Record before it, that the Air Force was correct in its decision not to order the preparation of an EIS in connection with the take. The record shows that much detailed study went into the preparation of the environmental studies, and further shows the complete lack of any arbitrary, capricious or otherwise bad faith acts on the part of the Secretary.

Accordingly, the Government's MOTION FOR PARTIAL SUMMARY JUDGMENT as to First Colony's SIXTH DEFENSE in No. 77–0029–Civ–2, and the Government's MOTION FOR SUMMARY JUDGMENT as to COUNT V of the Complaint in No. 77–0030–Civ–2 are hereby ALLOWED, subject to the commands of the Court *supra*, and

IT IS SO ORDERED.

There remain before the Court at this juncture MOTIONS TO COMPEL Discovery posited by First Colony; specifically, First Colony seeks an ORDER from this Court which would compel the production of documents and also answers to Interrogatories. The Court has reviewed the MOTION TO COMPEL, and hereby DENIES First Colony's MOTION TO COMPEL with regard to the following Interrogatories and Documents: Interrogatories # 19, 22, 23, 27, 29(a), 31, 32, 41, 42, 43, 44, 45, 47, 48, 49, 50, 54, 55, 59, 60, 70, 72; Documents Request # 6, 7, 8, 10, 11; Request denied with regard to that part of Request # 13 which relates to Interrogatories 49, 50 and 59; Subsection (a) of Request # 14 is denied; # 15, 16, 17, 18, and 19 are also denied. All others contained in the MOTION TO COMPEL are hereby GRANTED, AND THE MOTION IS ALLOWED AS TO THOSE OTHERS and IT IS SO ORDERED.

First Colony also has before the Court a MOTION TO STRIKE certain attachments to the Government's briefs and memoranda, as well as certain of the Government's briefs. These MOTIONS TO STRIKE are hereby DENIED, and IT IS SO ORDERED.

LET THIS ORDER BE ENTERED FORTHWITH.